# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STEVEN J. ABRAHAM, and
H LIMITED PARTNERSHIP
on behalf of themselves and others
similarly situated,

        Plaintiffs,

vs.                                                No. CIV 12-0917 JB/ACT

WPX Energy Production, LLC
f/k/a WILLIAMS PRODUCTION COMPANY,
LLC, WILLIAMS FOUR CORNERS, LLC
and WILLIAMS ENERGY RESOURCES, LLC,

        Defendants.

## <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on Williams Four Corners, LLC's and

Williams Energy Resources LLC's Motion to Dismiss Plaintiffs' Third Claim for Relief, filed

October 30, 2012 (Doc. 18)("MTD"). The Court held a hearing on May 1, 2013. The primary

issues are: (i) whether, following New Mexico's "actual conflict" doctrine, there is a conflict

between New Mexico and Colorado law, as applied in this case; and (ii) whether, under New

Mexico and Colorado law, when a plaintiff has asserted a breach-of-contract claim against one

defendant, that plaintiff may also assert an unjust enrichment claim for the same subject matter

against a third party with whom the plaintiff does not have a contract. Although the parties did

not raise the choice-of-law issues, but discussed only New Mexico law, the Court concludes that

---

[1] The Court issued an Order, filed September 27, 2013 (Doc. 74), granting the Williams
Four Corners, LLC's and Williams Energy Resources LLC's Motion to Dismiss Plaintiffs' Third
Claim for Relief, filed October 30, 2012, (Doc. 18), stating that the Court would "at a later date
issue an opinion more fully detailing its rationale for this decision." Order at 1 n.1. This is the
promised opinion.

there is no actual conflict between New Mexico and Colorado law, because the Plaintiffs' unjust enrichment claims fail under both New Mexico and Colorado law. Thus, the Court will apply New Mexico law, grant the MTD, and dismiss the Plaintiffs' unjust enrichment claim.

## FACTUAL BACKGROUND

This matter arises from alleged royalty underpayments for wells in the San Juan Basin in New Mexico and Colorado. See Third Amended Class Action Complaint ¶¶ 13-14, at 5, filed October 29, 2012 (Doc. 15)("TAC"). As this matter comes before the Court on a motion to dismiss, the Court will assume that all facts in the Plaintiffs' complaints are true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(stating that, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)").

Defendant WPX Energy Production, LLC ("WPX Energy") is in the business of exploring for and producing natural gas, and is the lessee under the leases. See TAC ¶ 3 at 2; id. ¶ 10, at 4. The Plaintiffs own royalty and overriding royalty interests burdening WPX Energy's working interest in oil-and-gas leases in Colorado and New Mexico. See TAC ¶ 3, at 2; id. ¶ 6, at 3. The hydrocarbons at issue are produced from wells that WPX Energy owned and operated in San Juan Basin. See TAC ¶ 7, at 3; id. ¶ 13, at 5.

> The San Juan Basin, one of the largest natural gas producing fields located in northwest New Mexico and southwest Colorado, was originally developed in the early 1950's by El Paso Natural Gas Company . . . . The natural gas produced in the San Juan Basin is conventional gas which contains methane (natural gas) and entrained natural gas liquids ("NGLs"), such as ethane and butane. In order to make the gas safe to enter the interstate pipeline, the NGLs must be removed from the gas stream.

Elliott Indus. LP v. BP Am. Prod. Co., 407 F.3d 1091, 1099 (10th Cir. 2005)("Elliott Indus.").

Pursuant to separate contracts between WPX Energy, the "upstream" exploration and production company, TAC ¶ 3, at 2, and Defendant Williams Four Corners, LLC ("WFC"), the "'midstream' enterprise," TAC ¶ 4, at 2, WFC gathers the gas, transports it from the wells to a processing plant, and, in some instances, processes the extraction of NGLs.  TAC ¶ 4, at 2; id. ¶ 7, at 3; id. ¶ 11, at 4; id. ¶ 25, at 9; id. ¶ 39, at 12; id. ¶ 44, at 13; id. ¶ 64, at 18-19.  Defendant Williams Energy Resources, LLC ("WER") then markets and sells the NGLs on behalf of WPX Energy and WFC.  TAC ¶ 5, at 3; id. ¶¶ 39-40, at 12; id. ¶¶ 42, 44, at 13; id. ¶ 64, at 18.

## PROCEDURAL BACKGROUND

On October 29, 2012, the Plaintiffs filed the TAC, alleging that the combined conduct of WPX Energy, WFC, and WER has resulted in "systemic underpayment" of royalties and overriding royalties "due to the failure to pay on the burdened leaseholds' production on NGLs and on oil and condensate, understating the liquids content of production, the improper charging of post-production expenses against production revenues, and deductions in the royalty computation of charges that are not actually incurred and are unreasonable."  TAC ¶ 14, at 5. The Plaintiffs contend that, although their contracts are with WPX Energy, WFC and WER are jointly responsible for the underpayment of royalties, because WFC extracts NGLs, and because WER disposes of the NGLs "free of royalty at a substantial financial detriment" to the Plaintiffs and the proposed class.  TAC ¶ 14, at 5.  The Plaintiffs' claims against WPX Energy include breach of contract, see TAC ¶¶ 58-61, at 17-18; breach of the covenant of good faith and fair dealing, see TAC ¶¶ 62-65, at 18-19; breach of the implied covenant to market, see TAC ¶¶ 70-79, at 20-22; and violation of the New Mexico Oil and Gas Proceeds Payment Act, N.M. Stat. Ann. §§ 70-10-1 to -6, see TAC ¶¶ 86-88, at 23.  The claims against WFC and WER are for

unjust enrichment.  See TAC ¶¶ 66-69, at 19.  Against WPX Energy, WFC, and WER, the Plaintiffs request declaratory judgment, accounting for the underpayments, and an injunction for the future royalty calculations and payments.  See TAC ¶¶ 80-85, at 22-23.

The Plaintiffs allege that WFC and WER were unjustly enriched from WFC's processing contracts with WPX Energy, by retaining the value of the NGLs.  See TAC ¶¶ 64, 66-69, at 18-29; MTD at 2.  WFC and WER (collectively, "WFC/WER") move the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the unjust enrichment claims against them in the TAC.  See MTD at 1.  WFC/WER argue that the Plaintiffs cannot maintain an unjust enrichment claim against WFC or WER, because the Plaintiffs have an adequate remedy at law through the breach-of-contract claim against WPX Energy.  See MTD at 3.

WFC/WER argue that the contracts between the Plaintiffs and WPX Energy govern the Plaintiffs' NGL underpayment claims.  See MTD at 3.  "Elliott instructs that the Royalty Agreements are the 'very foundation' of the parties' relationship, and defines the 'core duty of a royalty payment.'"  MTD at 3 (quoting Elliott Indus., 407 F.3d at 1108).  By filing a breach-of-contract claim against WPX Energy based on the royalty agreements, WFC/WER say that the Plaintiffs recognize that the royalty agreements govern the underpayment claims.  See MTD at 4.  WFC/WER contend that the existence of royalty agreements precludes the Plaintiffs from asserting quasi-contractual claims against WPX Energy.  See MTD at 4.  WFC/WER argue that the Plaintiffs cannot maintain unjust enrichment claims, because, "[f]irst, Plaintiffs have an adequate remedy at law (breach of contract) against WPX.  Second, any connection between Plaintiffs and Williams is too attenuated to give rise to a claim of unjust enrichment.  And third, Plaintiffs fail to meet the requirements for unjust enrichment."  MTD at 4-5.

- 4 -

Regarding the first argument, WFC/WER argue that the unjust enrichment theory evolved to provide relief when a party cannot claim relief through an existing contract or other remedy at law.  See MTD at 5.  WFC/WER contend that, if the parties are in privity and can pursue a contract claim, they cannot pursue unjust enrichment claims.  See MTD at 5. WFC/WER argue that New Mexico law, as the Tenth Circuit construed it in Elliott Indus., does not allow unjust enrichment claims if there is an enforceable express contract between the parties, because the Tenth Circuit stated that "'the hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue.'"  MTD at 5 (alteration in original)(quoting Elliott Indus., 407 F.3d at 1117).  WFC/WER point out that other courts have "barred unjust enrichment claims against third parties when the claim involves the issues that are the subject of a contract." MTD at 6 (citing Randall's Island Aquatic Leisure, LLC v. City of New York, 938 N.Y.S.2d 62, 62 (N.Y. App. Div. 2012); Belino Schwartz Padob Adver., Inc. v. Solaris Mktg. Grp. Inc., 635 N.Y.S.2d 587, 588 (N.Y. App. Div. 1995); Pepi Corp. v. Galliford, 254 S.W.3d 457, 462 (Tex. App. 2007)).  Because the claim against WFC/WER covers the same subject matter as the breach-of-contract claim against WPX Energy, WFC/WER argue that the Plaintiffs cannot maintain the unjust enrichment claim.  See MTD at 7.

Next, WFC/WER contend that the relationship between the Plaintiffs and WFC or WER is too attenuated to support an unjust enrichment claim.  See MTD at 7.  According to WFC/WER, the Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. b (2011), articulates the principle that, unless the claimant has a legally protected interest in the benefit conferred on another party, "the fact that we derive advantage from the efforts and expenditures

of others is not 'unjust enrichment' but just one of the advantages of civilization."  MTD at 7.
WFC/WER cite cases from New York to support the proposition that, without a direct
relationship, a plaintiff cannot bring an unjust enrichment claim against a third party: "[T]o allow
an unjust enrichment claim in that circumstance would require parties to 'probe the underlying
relationships between the businesses with whom they contract and other entities tangentially
involved but with whom they have no connection.  This would impose a burdensome obligation
in commercial transactions.'"  MTD at 7 (citing Georgia Malone Co. Inc. v. Rieder, 973 N.E.2d
743, 748 (N.Y. 2012)).  In this case, WFC/WER argue that the Plaintiffs are not parties to, or
beneficiaries of, the contracts among WPX Energy, WFC, and WER.  See MTD at 8.
WFC/WER argue that the "Plaintiffs seek to assert a claim against WFC based on a processing
contract between WPX [Energy] and WFC.  Similarly -- and another step removed -- Plaintiffs
seek to assert a claim against WER, based on an NGL sales/purchase contract between WFC and
WER."  MTD at 8.  WFC/WER argue that allowing the Plaintiffs to pursue the unjust enrichment
claims against them threatens "the possibility of never-ending claims all the way up the supply
chain."  MTD at 9.

Third, WFC/WER argue that the Plaintiffs' claims do not satisfy the requirements of
unjust enrichment.  See MTD at 9.  WFC/WER contend that, under New Mexico law, a party
asserting unjust enrichment must show that: "(1) another has knowingly benefited at one's
expense[;] (2) in a manner such that allowance of the other to retain the benefit would be unjust."
MTD at 9 (quoting Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11, 129 N.M. 200,
3 P.3d 965).  Citing cases from Idaho, Texas, and New York, WFC/WER assert that the
defendant in an unjust enrichment case "must be the intended beneficiary," MTD at 9 (citing

Cuevas v. Barraza, 277 P.3d 337, 344 (Idaho 2012)), and that a plaintiff must show that "his efforts were undertaken" for the defendant, MTD at 9 (quoting Concept Gen. Contracting, Inc. v. Asbestos Maintenance Servs., Inc., 346 S.W.3d 172, 182 (Tex. App. 2011)).  Because WFC and WER were, in their view, at best, "incidental beneficiaries" and not intended beneficiaries, WFC/WER assert that the Plaintiffs have not alleged facts sufficient to support the unjust enrichment claims against them.  See MTD at 10, & n.10 (quoting Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs., Inc., 346 S.W.3d at 182).

The Plaintiffs respond that the Defendants "have arrangements" where WFC/WER "physically possess the liquids at the wells and processes the gas stream to extract the NGLs and sell them for its sole financial gain avoiding payment of the plaintiffs' royalties."  Plaintiffs' Response in Opposition to Williams Four Corners and Williams Energy Resources' Motion to Dismiss Third Claim for Relief at 2, filed November 12, 2012 (Doc. 20)("Response").  The Plaintiffs argue that they are "lawfully entitled to share in the proceeds from the sale of those NGLs and other liquids," but that WPX Energy pays them royalties on the "much less valuable residue gas (methane) remaining" after WFC/WER have extracted and taken the liquids. Response at 2.  The Plaintiffs urge the Court that it is to "accept as true all well-pleaded allegations in the complaint and construe them in favor of the non-moving party."  Response at 2-3 (citing Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001); MacArthur v. San Juan Cnty., 309 F.3d 1216, 1221 (10th Cir. 2002)).  The Plaintiffs repeat the allegations from the TAC, including that WPX Energy performs the function of paying royalty, overriding royalty, and production taxes each month, see Response ¶ 4, at 4 (citing TAC ¶ 10, at 4), and that the "NGLs produced as part of the gas stream are subsequently extracted at plants owned and operated by

Williams and retained and disposed of by Williams free of royalty," Response ¶ 7, at 4 (citing TAC ¶ 14, at 5).

The Plaintiffs assert that they are not seeking double recovery from the Defendants, but that they are pursuing unjust enrichment claims against WFC and WER as an alternative theory, in case WPX Energy raises a defense to the underlying royalty agreements or to the Plaintiffs' right to recover under those agreements.  See Response at 7.  The Plaintiffs say that WFC/WER's reliance on Elliott Indus. is misleading, because Elliott Indus. rejects unjust enrichment when the plaintiff royalty owner asserts unjust enrichment claims against the producer/lessee.  See Response at 8.  The Plaintiffs emphasize that their unjust enrichment claim is against WFC/WER, and not against WPX, and that, because the Plaintiffs do not have contracts with WFC/WER, Elliott Indus. "therefore actually stands for the principle that plaintiffs have a viable claim against the Williams defendants."  Response at 8.  The Plaintiffs argue that, after the Tenth Circuit decided Elliott Indus., the Court of Appeals of New Mexico has allowed unjust enrichment claims "even where a contractual relationship exists between plaintiff and defendant."  Response at 8 (citing Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶ 91, 276 P.3d 252, cert. granted, 2012-NMCERT-003, 293 P.3d 184 (table); Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127, ¶ 20, 140 N.M. 552, 144 P.3d 111).

The Plaintiffs argue that New Mexico law supports their unjust enrichment claims against WFC/WER, even though the underpayment claims are also the subject of the breach-of-contract claim against WPX Energy.  See Response at 9.  The Plaintiffs point to Ontiveros Insulation Co. v. Sanchez, in which the Court of Appeals of New Mexico permitted two subcontractors to sue homeowners for unjust enrichment when the general contractor declared bankruptcy before the

subcontractors were paid.  See Response at 10 (citing 2000-NMCA-051, ¶ 12).  The New Mexico court allowed the claim, "despite the general rule that subcontractor suits against property owners are generally disfavored."  Response at 10 (citing Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-200, ¶ 12).  "Ontiveros demonstrates that under New Mexico law, a claimant who has a breach of contract cause of action against one party nonetheless has a right to recover its loss from others who are not parties to the contract based on unjust enrichment." Response at 10.  The Plaintiffs also cite two District of New Mexico decisions interpreting New Mexico law to support their argument that an underlying contract does not bar an unjust enrichment claim.  See Response at 10-11 (citing Cruse v. St. Vincent Hosp., 729 F. Supp. 2d 1269 (D.N.M. 2010)(Johnson, J.), Olivo v. Crawford Chevrolet, Inc., 799 F. Supp. 2d 1237 (D.N.M. 2011)(Black, J.)).

To further support their argument that New Mexico law supports the claim for unjust enrichment, the Plaintiffs cite New Mexico statutes and cases recognizing "a strong public policy favoring the rights of royalty and overriding royalty owners to receive monies owed them by a lessee/payor."  Response at 11 (citing Greer v. Salmon, 1971-NMSC-002, 82 N.M. 245, 479 P.2d 294; Libby v. DeBaca, 1947-NMSC-007, 51 N.M. 95, 179 P.2d 263; New Mexico Proceeds Payment Act, N.M. Stat. Ann. §§ 70-10-1 to -6).  The Plaintiffs further cite the Supreme Court of Texas to show that a royalty owner may recover under unjust enrichment "from a party that unjustly benefits and receives royalty proceeds that were actually due the owner."  Response at 12 (citing Gavenda v. Strata Energy, Inc., 705 S.W.2d 690 (Tex. 1986)).  The Plaintiffs argue that New Mexico courts would allow their unjust enrichment claim against WFC/WER, because "allowing Williams to retain that benefit without payment would be patently unjust."  Response

at 13.  In the Plaintiff's view, "'[e]quity is reluctant to permit a wrong to be sufferance without a remedy.  It seeks to do justice and is not bound by strict common law rules or the absence of precedents.  It looks to the substance rather than the form.'"  Response at 13 (quoting Ontiveros Insulation Co. v. Sanchez, 129 N.M. at 204).

The Plaintiffs note that WFC/WER rely heavily on cases from other states to support their arguments against an unjust enrichment claim.  See Response at 13.  For example, the Plaintiffs contend that New Mexico law does not require that the defendant be the intended beneficiary of the claimant's efforts.  See Response at 13 ("No New Mexico case holds that there is an intended beneficiary element to an unjust enrichment claim, and Williams cites no New Mexico authority for the proposition.").  Instead, the Plaintiffs argue that "New Mexico courts have liberally applied equitable principles in claims for unjust enrichment and rely on the equitable analysis to protect claimants and defendants."   Response at 14 (citing Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051, ¶¶ 11-13, Hydro Conduit Corp. v. Kemble, 1990-NMSC-061, 110 N.M. 173, 179, 703 P.2d 855; Credit Inst. v. Veterinary Nutrition Corp, 2003-NMCA-010, 133 N.M. 248, 253, 62 P.3d 339).  Further, the Plaintiffs distinguish the cases that WFC/WER cite, because the third-parties in those cases "had no role in the benefit being conferred on [them]," unlike the present case where "Williams' retention of financial benefit from the NGLs proximately results from its own active role and behavior in excluding royalty on produced liquids."  Response at 14, 15.

WFC/WER reply that, although the Plaintiffs may pursue alternative theories of relief, those alternative theories must state a claim upon which relief can be granted, which is not true of the unjust enrichment claims against WFC and WER.  See Williams Four Corners, LLC's and

Williams Energy Resources, LLC's Reply in Further Support of Motion to Dismiss Plaintiffs' Third Claim for Relief at 2, filed November 30, 2012 (Doc. 28)("Reply").  WFC/WER argue that Elliott Indus. is binding on the Court and that it bars unjust enrichment when there is a contract. See Reply at 3.  WFC/WER assert that, "[w]hile WPX challenges Plaintiffs' *construction* of the royalty obligation, WPX does not challenge the existence of valid contracts between it and Plaintiffs."  Reply at 2 n.1 (emphasis in original).  Because the Plaintiffs can pursue a breach-of-contract claim against WPX Energy for the royalty underpayments, WFC/WER argue that the Plaintiffs cannot pursue unjust enrichment claims for the same royalty underpayments against WFC and WER.  See Reply at 3.  Regarding the two subsequent Court of Appeals of New Mexico decisions since Elliott Indus., WFC/WER argue that the cases do not control, because they are distinguishable and are not intervening decisions from the state's highest court.  See Reply at 4.  For example, in Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127, the Court of Appeals of New Mexico refused to consider the validity of the unjust enrichment claim and sent it to the arbitrator to decide instead.  See Reply at 5 (citing Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127 ¶ 3).  Thus, in WFC/WER's view, Heimann v. Kinder-Morgan CO2 Co. does not stand for the proposition that the "royalty owners could proceed on claims for unjust enrichment and breach of settlement agreement."  Reply at 5 (citing Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127 ¶¶ 20, 25).  WFC/WER also distinguish Starko, Inc. v. Presbyterian Health Plan Inc., in which "the plaintiff class of pharmacists was forced by the New Mexico Human Services Department (HSD) into contracts with managed care organizations (MCOs) relating to the provision of pharmacy services under Medicaid, and New Mexico's SALUD! Managed care program."  Reply at 5 (citing Starko, Inc. v. Presbyterian Health Plan Inc.,

2012-NMCA-053 ¶¶ 1-7).  According to WFC/WER, a New Mexico statute -- N.M. Stat. Ann. § 27-2-16 -- governed "how the Medicaid programs paid plaintiff pharmacists," and the plaintiffs' unjust enrichment claim against the MCOs was distinct from their contract claim against the MCOs, because the unjust enrichment claim was based on an alleged violation of a statute, not a contract.  Reply at 5-6.  In WFC/WER's view, "Starko simply does not support the proposition that an unjust enrichment claim can stand where there exists a contract addressing issues that are the subject of the unjust enrichment claim," Reply at 6, because the Court of Appeals of New Mexico "did not address if (or how) the plaintiffs' unjust enrichment claim overlapped with the 'express contract regulat[ing] the relations of the parties with respect to the disputed issue,'" Reply at 7 (alteration in original)(quoting Elliott Indus., 407 F.3d at 1117), and because Starko, Inc. v. Presbyterian Health Plan, Inc. "turned primarily on the existence of a statutory remedy, which, according to the Supreme Court of New Mexico, will not 'deprive[] [courts] of their inherent equitable powers' absent 'express language or necessary implication,'" Reply at 7 (alterations in original)(quoting Sims v. Sims, 1996-NMSC-078 ¶ 33, 122 N.M. 618, 930 P.2d 153).

WFC/WER argue that the Plaintiffs mischaracterize Ontiveros v. Sanchez by applying it outside of subcontractor/homeowner suits, and point to a portion of the opinion in which the Court of Appeals of New Mexico limited its holding:

> "In so holding, we wish to emphasize that recovery on such an action may not be had in every instance where a subcontractor has furnished labor or materials which benefit a third person which whom there is no privity of contract.  Our decision today is limited to affirming the propriety of quasi contract as a remedy in a particular factual situation.  Each case must be decided according to the essential elements of quasi contract."

Reply at 8 n.5 (quoting Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051 ¶ 22).  Instead,

- 12 -

WFC/WER say that <u>Ontiveros Insulation Co. v. Sanchez</u> "reaffirms the general disfavor of equitable remedies when there exists a remedy at law (i.e., contract) . . . ."  Reply at 8. WFC/WER point out that the Court of Appeals of New Mexico permitted the unjust enrichment claim to proceed in that case, but only because the subcontractors had "pursued 'all possible remedies before turning to the present action,'" had "'exhausted their remedies against the person with whom they'd contracted,'" and "had not recovered any value for their services." Reply at 8 (quoting <u>Ontiveros Insulation Co. v. Sanchez</u>, 2000-NMCA-051, ¶ 21).

WFC/WER argue that the Plaintiffs' reliance on New Mexico policy -- that the unjust enrichment claim is "fully supported by New Mexico principles of oil and gas law," Response at 11 -- does not help the Plaintiffs, because the Plaintiffs "do not cite a *single case* allowing a royalty owner to assert any claim -- unjust enrichment or otherwise -- against a third party gas processor or marketer," Reply at 11 (emphasis in original).  WFC/WER direct the Court instead to several New York cases to demonstrate that the lack of a relationship between WFC/WER and the Plaintiffs should preclude an unjust enrichment claim, because the connection between the parties is too attenuated.  <u>See</u> Reply at 14 (citing <u>Sperry v. Compton</u>, 863 N.E.2d 1012 (N.Y. 2007); <u>Mandarin Trading Ltd. v. Wildenstein</u>, 944 N.E.2d 1104 (N.Y. 2011); <u>Georgia Malone & Co., Inc. v. Rieder</u>, 973 N.E.2d 743 (N.Y. 2012)).  Although WFC/WER acknowledge their relationship with WPX Energy, they contend that they do not have any dealings with the Plaintiffs "besides just knowing the other exists."  Reply at 15.

The Court held a hearing on the MTD on May 1, 2013.  <u>See</u> Transcript of Hearing (taken May 1, 2013), filed October 10, 2013 (Doc. 84)("Tr.").  The Defendants explained the relationship between WPX Energy, WFC, and WER.  WPX Energy holds the leasehold interest

and produces the gas.  See Tr. at 34:22-23:1 (Sutphin).  "Once the gas comes out of the well, goes through various initial post-production stages and through a wellhead meter that gas is picked up by a midstream company, who in this Abraham case is Williams Four Corners."  Tr. at 35:2-5 (Sutphin).  WFC processes the gas to remove either impurities or the NGLs.  See Tr. at 35:17-22 (Sutphin).  At that point, WER markets and sells the NGLs.  See Tr. at 37:16-19 (Sutphin).  Before January 1, 2012, the companies were integrated,[2] so that WPX Energy was affiliated as a wholly owned subsidiary of The Williams Companies, Inc., but after that date, WPX Energy spun off as a separate, publicly traded company.  See Tr. at 36:5-23 (Sutphin)("As some integrated oil companies have done, they segregate . . . their production business from their midstream business from their . . . downstream business, refining and marketing and sales . . . .").  WPX Energy, WFC, and WER are no longer affiliated, but are "three separate companies."  Tr. at:20-22 (Sutphin).

The Court stated that it was concerned that the Tenth Circuit's broad language in Elliott Indus. -- "the presence of a contract bars a claim for unjust enrichment," 407 F.3d at 1117 -- precludes the Court from making its own determination of New Mexico state law regarding whether the Plaintiffs can maintain an unjust enrichment claim against WFC/WER, see Tr. at

---

[2] An "integrated oil and gas company" is

[a] business entity that engages in the exploration, production, refinement and distribution of oil and gas.  Given the high entry costs relating to many oil and gas industry operations, many of the world's largest oil and gas companies, like Chevron Corporation and Exxon Mobile, are integrated.  Typically, integrated companies divide their various operations into categories: upstream, which includes all exploration and production endeavors, and downstream, which is confined to refinement and marketing activities.

Integrated Oil & Gas Company, Investopedia, http://www.investopedia.com/terms/i/integrated-oil-gas-company.asp (last visited March 8, 2014).

40:1-14 (Court).  The Court said that, if it concludes, however, that the language in Elliott Indus. does not constrain the Court, then it is inclined to think that New Mexico would allow unjust enrichment claims in the absence of contractual relationships, see Tr. at 40:15-20 (Court). WFC/WER argued that Elliott Indus. binds the Court, based on its language that "'quasi-contractual remedies' such as unjust enrichment 'are not to be created when an enforceable express contract'" exists.  Tr. at 42:2-5 (Sutphin)(quoting Elliott Indus., 407 F.3d at 1117). WFC/WER explained that, in Elliott Indus., the plaintiffs, who were in privity of contract with the defendants, brought an unjust enrichment claim against an integrated entity that was both a lessee and a processor.  See Tr. at 42:11-18 (Sutphin).  The Court asked whether the fact that the defendants in Elliott Indus. were completely integrated and had contracts with the plaintiffs made it dangerous to rely on Elliott Indus. in this case.  See Tr. at 43:8-14 (Court).  WFC/WER argued that "the better reading of Elliott is that if a contract regulates the disputed issue, without regard for who the contracting party is, it controls," and that they do not think Elliott Indus. "can be read to differentiate between defendants and third parties."  Tr. at 50:8-13 (Sutphin).

WFC/WER argued that allowing the unjust enrichment claim against WFC and WER to move forward with the breach-of-contract claim against WPX would risk resulting in different interpretations of what the contract says.  See Tr. at 43:15-44:4 (Sutphin).  They asserted that numerous cases from other states hold "that a claim for unjust enrichment cannot be maintained against a third party relating to the subject matter of a valid contract."  Tr. at 45:9-12.  For example, in Pepi Corp. v. Galliford, the Court of Appeals of Texas "preclud[ed] the plaintiff . . . from asserting unjust enrichment against a third party where plaintiff was a party to a contract that defined its rights."  Tr. at 45:20-25 (Sutphin).  WFC/WER also cited Morales v. Dalworth

- 15 -

Oil Co., 698 S.W.2d 772 (Tex. App. 1985), which states that "[t]here can be no implied contract where the subject matter is covered by a valid express contract."  Tr. at 46:14-15 (Sutphin)(citing Morales v. Dalworth Oil Co., 698 S.W.2d at 774-76).  WFC/WER argued that these statements express "the best statement of the law, and the law that should be followed here."  Tr. at 47:5-6 (Sutphin).   In WFC/WER's view, "when plaintiffs seek to have something implied that is covered by an express contract, there's a great potential for conflict, and ultimately the plaintiffs and the Court could participate in doing violence to a contract and to ignoring a contract."  Tr. at 47:7-11 (Sutphin).  The Court asked whether this concern was more of a theoretical risk, rather than a practical one.  See Tr. at 47:25-48:4 (Court).  WFC/WER argued that, even though it is a theoretical problem, the problem still exists.  See Tr. at 48:5-6 (Sutphin).

WFC/WER argued that Elliott Indus., as a Tenth Circuit decision "making a determination of state law," controls the disposition of this case, absent an intervening decision by the state's highest court.  Tr. at 51:4-8 (Sutphin).  Although the Plaintiffs directed the Court to Heimann v. Kinder-Morgan CO2 Co. and Starko, Inc. v. Presbyterian Health Plan, Inc., WFC/WER contend that, because neither are from the Supreme Court of New Mexico, they do not change the Court's analysis.  See Tr. at 51:10-14 (Sutphin).  WFC/WER argued that, even if Heimann v. Kinder-Morgan CO2 Co. and Starko, Inc. v. Presbyterian Health Plan, Inc. were from the Supreme Court of New Mexico, they are distinguishable.  See Tr. at 51:15-20 (Sutphin).  WFC/WER contended that, for example, in Heimann v. Kinder-Morgan CO2 Co., the Court of Appeals of New Mexico expressly refused to consider the validity of the unjust enrichment claim and, instead, said that the arbitrator must decide whether to dismiss that claim.  See Tr. at 52:1-6 (Sutphin).  Similarly distinguishable from WFC/WER's perspective, Starko,

- 16 -

Inc. v. Presbyterian Health Plan, Inc. involved complex facts that should be "limited to its facts and circumstances."   Tr. at 52:11-15 (Sutphin).   WFC/WER argued that Starko, Inc. v. Presbyterian Health Plan, Inc. seemed to turn on the existence of a statutory remedy, see Tr. at 52:17 (Sutphin), and the Court of Appeals of New Mexico refused to address the breach-of-contract claims, meaning that it could not evaluate the overlap between breach-of-contract and unjust enrichment claims, see Tr. at 53:12-23 (Sutphin).

WFC/WER argued that, while New Mexico law recognizes some exceptions to allow for unjust enrichment claims, none of those exceptions apply in this case.   See Tr. at 54:21-22. WFC/WER assert that, in Ontiveros Insulation Co. v. Sanchez and Danley v. City of Alamogordo, New Mexico courts permitted plaintiffs to bring unjust enrichment claims, because there was an inadequate legal remedy.   See Tr. at 55:1-11 (Sutphin).  WFC/WER contend that, in Ontiveros Insulation Co. v. Sanchez, the Court of Appeals of New Mexico allowed the plaintiff subcontractor to pursue the unjust enrichment claim, because "the plaintiff subcontractor had no adequate remedy at law," and because the general contractor filed bankruptcy.   Tr. at 55:15-56:14 (Sutphin).   WFC/WER assert that, in Danley v. City of Alamogordo, the "contract[] between the contractor and the City was deemed to be void because it had not followed the . . . Public Purchasing Act."  Tr. at 56:16-21 (Sutphin).  WFC/WER argued that the Supreme Court of New Mexico allowed the unjust enrichment claim to proceed, because the contract was void, and unjust enrichment "was the only remedy available."   Tr. at 57:2-8 (Sutphin).   WFC/WER argued that the unjust enrichment claims against WFC and WER "do not fit into one of these . . . narrow exceptions recognized by New Mexico law."  Tr. at 57:9-12 (Sutphin).

The Plaintiffs explained that their claims against WFC/WER are not royalty

underpayment claims, although the claims are related.  See Tr. at 60:1-2 (Condon).  They allege

that the Defendants

> have acted among themselves and entered into a contract by which WPX, the
> producer, agrees with the processor: You can take all of the natural gas liquids as
> part of the processing agreement, and you can give us methane gas to make up or,
> what they say, keep whole in the industry, us as a producer for the natural gas
> liquids that we're letting you take.

Tr. at 59:7-13 (Condon).  The Plaintiffs argued that Elliott Indus. does not constrain the Court,

because the parties in that case were in privity of contract, unlike in the present case.  See Tr. at

62:15-24 (Condon).  The Plaintiffs contended that New Mexico law allows a plaintiff to "bring a

claim for unjust enrichment against a party with whom you're not in privity of contract even if

that claim relates to a claim that sounds in breach of contract against another party."  Tr. at

64:22-65:1 (Condon).  The Plaintiffs asserted that unjust enrichment in New Mexico is "an

expansive policy,  . . . designed to give relief in a situation where there's no contractual remedy."

Tr. at 67:7-10 (Condon).  The Plaintiffs argued that the rule that WFC/WER advocate would

"mean[] that when you have a royalty underpayment issue the royalty owners are limited to just

their contract and contract-related implied covenant claims and maybe the Proceeds Payment Act

claim."  Tr. at 67:19-23 (Condon).  They argued that this rule does not make sense in an

analogous situation:

> What if there was a lease arrangement between a royalty owner and a producer,
> and a third party came in and intentionally interfered with that lease contract and
> caused the royalty payor to breach the contract?  Would New Mexico courts say
> the royalty owner doesn't have an intentional-interference-with-contract claim
> against the third party under those facts?  I think, clearly, New Mexico courts
> would say you have that claim.  And I realize it's a tort claim, but I think the
> principle applies equally to our situation.

Tr. at 68:1-10 (Condon).   The Plaintiffs argued that the unjust enrichment claim against

WFC/WER is for holding the royalty share of the NGLs revenue, while the claim against WPX Energy is for underpayment of royalties.  See Tr. at 68:11-16 (Condon).  The Plaintiffs warned the Court against relying heavily on cases from other jurisdictions, because, for example, the Texas court in Pepi Corp. v. Galliford came to "a completely different result" than what the Court of Appeals of New Mexico did in Ontiveros Insulation Co. v. Sanchez.  Tr. at 69:24-70:10 (Condon).  The Plaintiffs urged the Court to review Ontiveros Insulation Co. v. Sanchez, arguing that the Court of Appeals of New Mexico articulated a rule that can be applied beyond the facts of that case when it said that the plaintiffs' contractual relationship with the MCOs did not foreclose their claims for unjust enrichment.  See Tr. at 70:19-71:1 (Condon).  The Plaintiffs contended that "[t]he adequate-remedy-of-law issue is on a defendant-by-defendant basis, that it's not a global adequate-remedy-at-law analysis."  Tr. at 71:17-19 (Condon).

The Plaintiffs reiterated their position that Elliott Indus. does not control in this case, because, unlike the parties in Elliott Indus., the Plaintiffs are not in privity with WFC/WER; although their claims are related to the royalty underpayment breach-of-contract claims, they are not the same.  See Tr. at 72:11-18 (Condon).  The Court asked how to limit the Plaintiffs' proposed interpretation of New Mexico law, which would allow a plaintiff to sue third parties for claims in which it is not in privity.  See Tr. at 73:5-10 (Court).  The Plaintiffs said one limitation would be the rule against double recovery, which would prevent the Plaintiffs from recovering more than one hundred percent of their proved and awarded damages.  See Tr. at 73:11-15 (Condon).  The Court asked what would prevent the Plaintiffs in this case from double recovery, see Tr. at 73:23-74:2 (Court), and the Plaintiffs said that the fact that both claims are before the same Court would prevent the double recovery, see Tr. at 74:7-9 (Condon).  Because unjust

enrichment is an equitable claim that is not submitted to the jury, the Plaintiffs asserted that the Court could determine whether to award any damages for unjust enrichment after determining if a jury's verdict for the breach-of-contract claim represents the Plaintiffs' full damages.  See Tr. at 74:22-75:9 (Court, Condon).

Noting the Plaintiffs' position that the unjust enrichment claim and royalty underpayments claims are distinct, the Court asked whether WPX Energy could bring a claim against WFC/WER to protect itself against the breach-of-contract claim.  See Tr. at 75:10-13 (Court).  The Plaintiffs said that WPX Energy would not have a claim against WFC/WER, unless WFC coerced it into the agreement.  See Tr. at 75:17-76:25 (Court, Condon).  The Plaintiffs said they doubted that WPX Energy would bring a claim against WFC or WER, because, in the Plaintiffs' view, the Defendants are "voluntarily stuck with each other," but acknowledged that they would need to wait until discovery to determine if there was "something untoward" in the Defendants' agreements with each other.  Tr. at 77:4-16 (Condon).  The Plaintiffs stated that the rule of law which they are urging the Court to apply is "that the plaintiffs have a right to bring a claim for unjust enrichment against the Williams entities," and that, although they are bringing alternative claims for relief, the Court does not need to set any limitations or worry about double recovery until the claims go to a fact-finder, and "that's the point at which [the Court can] address the limits on recovery, the potential for double recovery, and any other concerns you have about a damage award."  Tr. at 77:17-78:16 (Court, Condon).

WFC/WER argued that there are no limitations to the Plaintiffs' proposed rule, which would allow them to sue WFC, the processor, and WER, the marketer, and could potentially allow them to continue suing down the line to the subsequent marketers and subsequent

manufacturing plants that make some type of profit on the NGLs: "Where does it end?  If they can sue the processer and the marketer, why can't they sue the next marketer in the chain or the utility or the plant or any other user in the supply chain?"  Tr. at 79:23-80:11 (Sutphin).  The Court questioned whether the Plaintiffs would have any incentive to sue "so far down the chain," and whether it should cut off the Plaintiffs claims as a matter of law, as WFC/WER assert that New York courts have done.  Tr. at 80:12-21 (Court).  WFC/WER argued that allowing the unjust enrichment claim to proceed threatens double recovery and that this situation is different from Ontiveros Insulation Co. v. Sanchez, because there is an adequate remedy at law in this case, unlike the situation when a contractor declares bankruptcy.  See Tr. at 81:14-82:22 (Court, Sutphin).  The Court asked at what point it should determine that there is an adequate remedy at law, noting that, although it seemed likely that WPX Energy would still be in business at the time of a potential trial in this case, it would want to apply a rule of law that is more generally applicable; WFC/WER said a number of federal district courts have dismissed unjust enrichment claims based on the plaintiffs pleading a valid breach-of-contract claim.  See Tr. at 82:23-83:10 (Court, Sutphin).

WFC/WER compared Pepi Corp. v. Galliford with Ontiveros Insulation Co. v. Sanchez, and argued that, contrary to the Plaintiffs' assertion that the cases reveal that Texas and New Mexico law on unjust enrichment differ, Pepi Corp. v. Galliford "recognizes and discusses three exceptions under Texas law to the prohibition against unjust-enrichment claims when there is a valid written contract," and that Ontiveros Insulation Co. v. Sanchez is an exception that New Mexico courts recognize.  Tr. at 84:2-15 (Sutphin).  WFC/WER then turned to Starko, Inc. v. Presbyterian Health Plan, Inc., and argued that the Court of Appeals of New Mexico did not

address any of the breach-of-contract claims between the plaintiffs and the MCOs; the Court noted that there were breach-of-contract claims involved, questioned what the Court of Appeals of New Mexico meant when it said it would not deal with any of the breach-of-contract claims, and asked, if the Court of Appeals of New Mexico was not willing to dismiss the unjust enrichment claims, whether district courts should be cautious about dismissing unjust enrichment claims. See Tr. at 84:20-87:10 (Sutphin, Court). WFC/WER argued that the Court should not apply Starko, Inc. v. Presbyterian Health Plan, Inc. in this case, because the Court of Appeals of New Mexico allowed the plaintiffs to pursue unjust enrichment as a private cause of action in the context of a statutory remedy, and that the breach-of-contract claim is distinct from the statutory remedy. See Tr. at 87:13-17 (Sutphin). Further, WFC/WER contended that the plaintiffs in Starko, Inc. v. Presbyterian Health Plan, Inc. were potential third-party beneficiaries, and the Court of Appeals of New Mexico may have seen unjust enrichment as the remedy. See Tr. at 87:23-88:4 (Sutphin).

## LAW REGARDING RULE(12)(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a

reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC

v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

## SCHOLARSHIP REGARDING CONFLICT OF LAW

Dissatisfaction with the fixed and mechanical rules of the First Restatement produced new suggestions -- a "revolution" -- in American conflicts law.  See Peter Hay, Patrick J. Borchers, Symeon C. Symeonides, Conflict of Laws 27 (5th ed. 2010).  One approach stands out -- Brainerd Currie's governmental interest theory.  See Hay, supra, at 27.  In Currie's view, when a court confronted with a case with foreign connections is asked to apply another state's laws, the court "should first inquire into the policies expressed in the laws of the involved states and into the circumstances in which it is reasonable for each state to assert an interest in the application of these policies."  Hay, supra, at 30.

This inquiry may lead to three possibilities that correspond to three categories of conflicts: (i) only one of the involved states is interested in applying its law -- the "false conflict" pattern; (ii) more than one state is interested -- the "true conflict" pattern; or (iii) none of the states are interested -- the "no-interest" pattern or "unprovided-for" case.  See Hay, supra, at 30. False conflicts also include cases in which the laws of the involved states are identical or produce identical results.  See Hay, supra, at 30 n.15.  This aspect of the "false conflicts" concept does not, however, add much, because parties will rarely seek the application of foreign law when it is

identical with local law, especially when the use of foreign law may leave them with the burden of proving it.  See Hay, supra, at 27 n.15.  Elimination of foreign law in this category of case is said to guard against a Constitutional-law objection to the application of the lex fori by an unconnected forum, but such instances are rare.  See Hay, supra, at supra at 30 n.15 (citing Kurt Lipstein, The General Principles of Private International Law, 135 Recueil des Courts 96, 155-56 (1972-I)).

In a nutshell, Currie argued that, subject only to constitutional restraints, the forum is entitled to and should apply its law to all three categories of cases, except to a few false conflict and unprovided-for cases.  See Hay, supra, at 31.  In false conflicts cases, Currie's analysis applies the law of the only interested state, which, "in the great majority of cases," is likely the forum state.  Hay, supra, at 31.  False-conflicts analysis examines the underlying policies both of forum law and of the other interested state or states.  See Hay, supra, at 31 n.19.  If the foreign law's policy does not call for its application, forum law will apply.  See Hay, supra, at 31 n.19. The principal contribution of this concept to conflict-of-laws methodology is the introduction of policy analysis and the concomitant possibility of conflict avoidance.  See Hay, supra, at 31 n.19. Currie recognizes -- through the "false conflict" concept -- that analysis should focus on underlying policies.  See Hay, supra, at 31 n.19.  "This part of Currie's analysis is neither controversial nor controvertible, at least for those who subscribe to the view that consideration of state interests is a proper starting point for resolving conflicts of law."  Hay, supra, at 31.

The traditional theory's "failure to inquire into state interests resulted in randomly sacrificing the interests of other states without promoting the interests of the state," Hay, supra, at 31-32; Currie, Selected Essays on the Conflict of Law 191, 589-90 (1963); in contrast,

Currie's solution to a false conflict results in applying the law of the interested state, without sacrificing any policies of the uninterested state, see Hay, supra, at 31-32.  "In this sense, the concept of a false conflict is an important breakthrough in American choice-of-law thinking and has become an integral part of all modern policy-based analyses."  Hay, supra, at 32.

> That this [concept] is by now taken for granted, even by [Currie's] critics, and forms the common denominator of all current choice of law methodologies is no reason to deny him the credit rightfully due to him.  Even if this were Currie's only contribution to conflicts theory, it would be sufficient to secure him a permanent position in the conflicts "Hall of Fame."

Symeon Symeonides, Revolution and Counter-Revolution in American Conflicts Law: Is There a Middle Ground?, 46 Ohio St. L.J. 549, 564 (1985).

## CONSTITUTIONAL LIMITATIONS ON APPLICATION OF FOREIGN LAW

In Allstate Insurance Co. v. Hague, 449 U.S. 302 (1981), two conflicting rules of state insurance law confronted the Supreme Court of the United States.  Minnesota permitted the "stacking" of separate uninsured motorist policies while Wisconsin did not.  449 U.S. at 305-06.  Although the decedent lived in Wisconsin, took out insurance policies in Wisconsin, and was killed there, he was employed in Minnesota, and after his death, his widow moved to Minnesota for reasons unrelated to the litigation and was appointed personal representative of his estate.  See 449 U.S. at 305.  She filed suit in Minnesota courts, which applied the Minnesota stacking rule.  See 449 U.S. at 305-06.

The plurality in Allstate Insurance Co. v. Hague noted that a particular set of facts giving rise to litigation could justify, constitutionally, the application of more than one jurisdiction's laws.  See 449 U.S. at 307.  The plurality recognized, however, that the Due Process Clause and the Full Faith and Credit Clause provided modest restrictions on the application of forum law.

- 26 -

See 449 U.S. at 307-08.  These restrictions required "that for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  449 U.S. at 312-313.  The dissenting Justices were in substantial agreement with the principle.  See 449 U.S. at 332 (Powell, J., dissenting, joined by Burger, C.J., and Rehnquist, J.).  The dissent stressed that the Due Process Clause prohibited the application of law which was casually or slightly related to the litigation, while the Full Faith and Credit Clause required the forum to respect the laws and judgments of other states, subject to the forum's own interests in furthering its public policy.  See 449 U.S. at 335-36.  The plurality in Allstate Insurance Co. v. Hague affirmed the application of Minnesota law because of the forum's significant contacts to the litigation, which supported the State's interest in applying its law.  See 449 U.S. at 313-329.

In Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985), gas company investors brought a class action to recover interests on royalties.  See 472 U.S. at 799.  The state district court entered judgment for the class, and the gas company appealed.  See 472 U.S. at 799.  The Supreme Court of Kansas affirmed over the gas company's contentions that the Due Process Claus and the Full Faith and Credit Clause of Article IV of the Constitution prohibited the application of Kansas law to all of the transactions between the gas company and the class.  See 472 U.S. at 799.  The gas company argued that Kansas courts could not apply Kansas law to every claim in the dispute.  See 472 U.S. at 802.  The gas company argued that the trial court should have looked to the laws of each state where the leases were located to determine, on the basis of conflict of laws principles, whether interest on the suspended royalties was recoverable

and at what rate.  See 472 U.S. at 802-803.   The Supreme Court of Kansas rejected the gas company's contentions.  See 472 U.S. at 803.

The Kansas courts applied Kansas contract and Kansas equity law to every claim in the case, notwithstanding that "over 99% of the gas leases and some 97% of the plaintiffs in the case had no apparent connection to the State of Kansas except for th[e] lawsuit."  472 U.S. at 814-15. The gas company protested that Kansas courts should apply the laws of the states where the leases were located, or at least apply Texas and Oklahoma law, because so many of the leases came from those states.  See 472 U.S. at 815-16.  The Kansas courts disregarded this contention and found the gas company liable for interest on the suspended royalties as a matter of Kansas law, and set the interest rates under Kansas equity principles.  See 472 U.S. at 816.  The Supreme Court of Kansas took the view that, in a nationwide class action where procedural due process guarantees of notice and adequate representation were met, the law of the forum should be applied unless compelling reasons exist for applying a different law.  See 472 U.S. at 822-23.

The Supreme Court of the United States, in an opinion that Justice Rehnquist wrote, sustained the gas company's argument regarding the choice of law, and held that Kansas law was not applicable to claims of all class members.  See 472 U.S. at 799.  The gas company contended that the total application of Kansas substantive law violated the constitutional limitations on choice of law that the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, § 1.  See 472 U.S. at 816.  The Supreme Court said it must first determine whether Kansas law conflicts in any material way with any other law which could apply.  See 472 U.S. at 816.  Justice Rehnquist stated: "There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit."  472

U.S. at 816.  The Supreme Court concluded that "the Supreme Court of Kansas erred in deciding on the basis that it did that the application of its laws to all claims would be constitutional."  472 U.S. at 818.

Justice Rehnquist began his analysis by noting that the Supreme Court, just four terms earlier, had addressed a similar situation in Allstate Insurance Co. v. Hague.  See Phillips Petroleum Co. v. Shutts 472 U.S. at 818.  Justice Rehnquist stated that, when considering fairness in this context, an important element is the parties' expectation.  See Phillips Petroleum Co. v. Shutts, 472 U.S. at 2822 (citing Allstate Ins. Co. v. Hague, 449 U.S. at 333 (Powell, J., dissenting)).  Justice Rehnquist stated that there was no indication that, when the leases involving land and royalty owners outside of Kansas were executed, the parties had any idea that Kansas would control.  See Phillips Petroleum Co. v. Shutts, 472 U.S. at 822.  Justice Rehnquist maintained that neither the Due Process clause, nor the Full Faith and Credit Clause, requires Kansas "'to substitute for its own [laws], applicable to persons and events within it, the conflicting statement of another state,'" 472 U.S. at 822 (quoting Pacific Employees Ins. Co. v. Industrial Accident Comm'n, 306 U.S. 493, 502 (1939)), but that Kansas "'may not abrogate the results of parties beyond its borders having no relation to anything done or to be done within them,'" Phillips Petroleum Co. v. Shutts, 472 U.S. at 822 (quoting Home Ins. Co. v. Dick, 281 U.S. 397, 410 (1930)).

Kansas' contacts to the litigation in Phillips Petroleum Co. v. Shutts can be gleaned from the Supreme Court of Kansas' opinion.  The gas company owned property and conducted substantial business in the state, so the Supreme Court of the United States stated that "Kansas certainly has an interest in regulating [the gas company's] conduct in Kansas."  472 U.S. at 819.

Justice Rehnquist stated, however, that "Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair."  472 U.S. at 821-822 (quoting Allstate Ins. Co. v. Hague, 449 U.S. at 312-313).  Justice Rehnquist stated that, given Kansas' "lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas," the application of Kansas law to every claim in this case was "sufficiently arbitrary and unfair as to exceed constitutional limits."  472 U.S. at 822.

> Justice Rehnquist stated:
>
> The issue of personal jurisdiction over plaintiffs in a class action is entirely distinct from the question of the constitutional limitations on choice of law; the latter calculus is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum.

472 U.S. at 821.

Justice Rehnquist stated that, whatever practical reasons may have commanded the rule that the Supreme Court of Kansas adopted, the rule was not consistent with the Supreme Court of the United States' decisions.  See 472 U.S. at 823.  Justice Rehnquist noted, however, that the Supreme Court was not determining which law must apply to the various transactions involved in the lawsuit, and reaffirmed the observation in Allstate Insurance Co. v. Hague that in many situations a state court may be free to apply one of several choices of law.  See 472 U.S. at 803. Justice Rehnquist stated, however, that the constitutional limitations laid down in cases such as Allstate Insurance Co. v. Hague and Home Insurance Co. v. Dick must be respected even in a nationwide class action.  See 472 U.S. at 823.  The Supreme Court therefore reversed the

Supreme Court of Kansas' judgment insofar as it held that Kansas law was applicable to all of the transactions which it sought to adjudicate.  See 472 U.S. at 823.  The Supreme Court remanded the case for further proceedings.  See 472 U.S. at 823.

## NEW MEXICO LAW REGARDING FALSE CONFLICTS OF LAW

In Ferrell v. Allstate Insurance Co., 2008-NMSC-042, 144 N.M. 405, 188 P.3d 1156, the Supreme Court of New Mexico described the "false conflict" or "actual conflict"[3] doctrine: "Under this analysis, when the laws of the relevant states do not actually conflict, the court may avoid a conflict-of-law analysis and may apply forum law to the entire class."  2008-NMSC-042, ¶ 16 (citing Phillips Petroleum Co. v. Shutts, 472 U.S. at 816).  "If, however, the laws of the relevant states actually conflict, or if the laws of certain of the relevant states conflict, then the forum court must resolve that conflict using the choice-of-law rules contained in the forum state's conflict-of-laws doctrine."  2008-NMSC-042, ¶ 16.  The focus of the doctrine is "not on whether the laws are superficially identical as written, but whether the effect of laws would be identical as applied to a particular case."  Fowler Brothers, Inc. v. Bounds, 2008-NMCA-091, ¶ 9, N.M. 510, 188 P.2d 1261.  See Ferrell v. Allstate Insurance Co., 2008-NMSC-042, ¶ 18.

---

[3] The Supreme Court of New Mexico used the term "actual conflict" to refer to what the Court of Appeals of New Mexico had called the "false conflict" doctrine, because

> "false conflict" actually has two different meanings.  See Robert A. Leflar et al., American Conflicts Law, § 92, at 270 (4th ed. 1986).  The first meaning of "false conflict" arises from the choice-of-law method advanced by Professor Brainerd Currie, "the governmental interest" analysis.  Id. at 270-71.  Under Currie's method, a false conflict arises when "only one of the involved states would be interested in applying its law."  Eugene F. Scoles et al., Conflict of Laws § 2.9, at 28 (4th ed. 2004).  The second meaning of the term "false conflict" is "no conflict of laws."  Leflar et al., supra, § 92, at 272.

Ferrell v. Allstate Ins. Co., 2008-NMSC-042, ¶ 16 n.2.

In Fowler Brothers, Inc. v. Bounds, an unlicensed contractor that was a purported employee of a licensed contractor working on an out-of-state contractor brought action against the licensed contractor for breach of contract and unjust enrichment after the licensed contract ceased to pay for work on the project. The Court of Appeals of New Mexico, in an opinion that the Honorable Michael Bustamante wrote and in which the Honorable Lynn Pickard and Roderick T. Kennedy joined, held that Arizona and New Mexico contractor licensing law did not conflict as applied to the action. The district court had concluded that: (i) under either Arizona or New Mexico law, the plaintiff was required to have an Arizona contractor's license to perform work on the project; and (ii) under either Arizona or New Mexico law, the plaintiff is prohibited from recovering under any cause of action, including equitable remedies, for its work on the project, because it did not have such a license. See 2008-NMCA-091, ¶ 5. The district court had avoided the choice-of-law issue by determining, albeit implicitly, that the applicable law of Arizona and New Mexico were the same or would yield the same results. See 2008-NMCA-091, ¶ 8. More specifically, the district court had dismissed the plaintiff's claims on the basis of its legal conclusion that, "[u]nder either Arizona or New Mexico law, Plaintiff is prohibited from recovering under any cause of action, including equitable remedies, for its work on the Project, because it did not have [an Arizona's contractor's] license." 2008-NMCA-091, ¶ 5.

The Court of Appeals of New Mexico found that implicit in the district court's conclusion was its determination that there was no conflict between Arizona and New Mexico law as it relates to the dispositive issue in this case, i.e., whether the plaintiff was required to have an Arizona contractor's license to recover damages for its work on the project. See 2008-NMCA-091, ¶ 8. Judge Bustamante said the Court of Appeals of New Mexico would first

- 32 -

consider whether the district court correctly determined that no conflict existed between Arizona and New Mexico law with respect to the case's circumstances, and concluded that no conflict existed.  See 2008-NMCA-091, ¶¶ 8-11 ("This Case Presents No Conflict Between Arizona and New Mexico Law." (bold removed)).

## LAW REGARDING NEW MEXICO CHOICE-OF-LAW RULES

Where a plaintiff invokes a federal district court's diversity jurisdiction, the district court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005).  The first step in a New Mexico choice-of-law analysis is to characterize the claim by "area of substantive law -- e.g., torts, contracts, domestic relations -- to which the law of the forum assigns a particular claim or issue."  Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, 140 N.M. 293, 296, 142 P.3d 374, 377.  There are only a few categories within which claims might fall -- "[t]ort cases, i.e., all 'civil wrongs,' are one class; contracts, i.e., every kind of enforceable promise, is another single class."  J. McLaughlin, Conflict of Laws: the Choice of Law Lex Loci Doctrine, the Beguiling Appeal of a Dead Tradition, Part One, 93 W. Va. L. Rev. 957, 989 (1991)(describing the categories as "tort, contract, or some other").  The court is then to apply the New Mexico choice-of-law rule applicable to that category of claim to determine what state's substantive law to apply.  See Guidance Endodontics, LLC v. Dentsply Intern., Inc., 749 F. Supp. 2d 1235, 1257 (D.N.M. 2010)(Browning, J.).

When a claim sounds in contract, New Mexico will generally apply the choice-of-law rule of lex loci contractus -- the law of the place of contracting.  See Ferrell v. Allstate Ins. Co.,

- 33 -

144 N.M. 405, 421, 188 P.3d 1156, 1172 (2008).  Like most states, however, "New Mexico respects party autonomy; [therefore] the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision." Fiser v. Dell Computer Corp., 144 N.M. 464, 467, 188 P.3d 1215, 1218 (2008)(citing N.M. Stat. Ann § 55-1-301(A)).  See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp., 108 N.M. 467, 470, 775 P.2d 233, 236 (1989).  "[W]hen application of the law chosen by the parties offends New Mexico public policy," however, a New Mexico court "may decline to enforce the choice-of-law provision and apply New Mexico law instead." Fiser v. Dell Computer Corp., 144 N.M. at 467, 188 P.3d at 1218.  "New Mexico courts will not give effect to another state's laws where those laws would violate some fundamental principle of justice." Fiser v. Dell Computer Corp., 144 N.M. at 467, 188 P.3d at 1218 (internal quotations omitted).  Where the plaintiff has invoked the federal district court's diversity jurisdiction, the court will accept New Mexico's law regarding whether to honor a contractual choice-of-law provision.  See MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc., 436 F.3d 1257, 1260 (10th Cir. 2006)("In cases like this one, where subject matter jurisdiction is based on diversity of citizenship, federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause.").

On the other hand, if the underlying claim is categorized as a tort, "New Mexico courts follow the doctrine of *lex loci delicti commissi* -- that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." Terrazas v. Garland & Loman, Inc., 140 N.M. at 296, 142 P.3d at 377.  The *lex loci delicti* rule defines the state where the wrong occurred as "the state where the last event necessary to make an actor liable for an alleged tort takes place." Zamora v. Smalley, 68 N.M. 45, 47, 358 P.2d 362, 363 (1961).  See

Restatement (First) of Conflicts of Law § 377 & cmt. a (1934).  Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred.  See First Nat'l Bank in Albuquerque v. Benson, 1976-NMCA-072, 89 N.M. 481, 482, 553 P.2d 1288, 1289 (referring to the rule as requiring application of "the law of the State of injury"); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 663 F. Supp. 2d 1138, 1150-51 (D.N.M. 2009)(Browning, J.).

Claims for unjust enrichment are distinct from claims sounding in contract or tort law. See Hydro Conduit Corp. v. Kemble, 110 N.M. at 178, 793 P.2d at 860 ("We have no disagreement with the scholarly view that restitution for unjust enrichment constitutes an independent basis for recovery in a civil-law action, analytically and historically distinct from the other two principal grounds for such liability, contract and tort.").  The Restatement (First) of Conflict of Laws § 453 provides: "When a person is alleged to have been unjustly enriched, the law of the place of enrichment determines whether he is under a duty to repay the amount by which he has been enriched."  Restatement (First) of Conflict of Laws § 453.  Although "New Mexico has traditionally followed the Restatement (First)," Ferrell v. Allstate Ins. Co., 2008-NMSC-042, ¶ 50, the Supreme Court of New Mexico has been willing to follow the Restatement (Second) of Conflict of Laws in certain cases, such as in multi-state class action cases in which the laws of the states involved actually conflict, because the Restatement (First) of Conflict of Laws is "particularly ill-suited for the complexities present in multi-state class actions," Ferrell v. Allstate Ins. Co., 2008-NMSC-042, ¶ 56 (adopting the Restatement (Second) of Conflict of Laws for multi-state contract class actions).  In Fowler Brothers, Inc. v. Bounds, the Court of Appeals of New Mexico explained that courts can "avoid a choice of law question when the laws

of the involved states would produce identical results," 2008-NMCA-091, ¶ 9, and agreed with

the district court's implicit determination that Arizona and New Mexico law on unjust

enrichment did not conflict as applied in the case, see 2008-NMCA-091, ¶ 20.

### NEW MEXICO LAW REGARDING UNJUST ENRICHMENT

"New Mexico has long recognized actions for unjust enrichment . . . ." Ontiveros

Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11, (citing Tom Growney Equip., Inc. v. Ansley,

1994-NMCA-159, 119 N.M. 110, 112, 888 P.2d 992, 994).  To prevail on an unjust enrichment

claim, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a

manner such that allowance of the other to retain the benefit would be unjust."  Ontiveros

Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11.  "The theory has evolved largely to provide

relief where, in the absence of privity, a party cannot claim relief in contract and instead must

seek refuge in equity."  Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11.  See Credit

Inst. v. Veterinary Nutrition Corp., 2003-NMCA-010, ¶ 21, 62 P.3d 339, 344; Hydro Conduit

Corp. v. Kemble, 1990-NMSC-061, 110 N.M. 173, 175, 793 P.2d 855, 857.  The Supreme Court

of New Mexico has stated that "[t]he general equity jurisdiction of the trial court is not available,

although properly pleaded, because appellee in fact had an adequate remedy at law."  Gen. Tel.

Co. of Sw. v. State Tax Comm'n, 1962-NMSC-005, 69 N.M. 403, 408, 367 P.2d 711, 715.  See

Sims v. Sims, 1996-NMSC-078, 122 N.M. 618, 624, 930 P.2d 153, 159 (stating "equity will not

act if there is a complete and adequate remedy at law").  Cf. Lopez v. Kase, 1999-NMSC-011,

¶ 6, 975 P.2d 346, 348 (stating that the Supreme Court of New Mexico "generally will not grant

equitable relief by way of an extraordinary writ when there is an adequate remedy available to

the petitioner at law, absent unusual and compelling circumstances").

**NEW MEXICO LAW REGARDING THE INTERRELATION OF TORT,
QUASI-CONTRACT, AND CONTRACT CLAIMS**

In Elliott Indus., the Tenth Circuit held that, under New Mexico law, "the existence of any tort liability cannot conflict with contractual duties between the parties."  407 F.3d at 1116 (citing Isler v. Tex. Oil & Gas Corp., 749 F.2d 22 (10th Cir. 1984); Rio Gen. Jewelers Supply, Inc. v. Data Gen. Corp., 101 N.M. 798, 689 P.2d 1269 (1984)).  See Hess Oil Virgin Islands v. UOP, Inc., 861 F.2d 1197, 1200 (10th Cir. 1988)(applying Illinois and Virgin Islands law)(explaining that Isler v. Tex. Oil and Gas Corp. holds that "no tort duty can be imposed on a party where that party's same duties and rights are specifically defined by contract").  In Isler v. Tex. Oil and Gas Corp., the Tenth Circuit reversed a judgment in favor of the plaintiffs where a defendant failed to make rental payments despite a provision in the plaintiffs' leases that the defendant had no responsibility to the plaintiffs if it failed to make rental payments.  See 749 F.2d at 22.  A jury returned a verdict that the defendant did not breach its duties under the leases, but that it was "nonetheless liable in tort for damages caused by its negligence."  749 F.2d at 22.  The Tenth Circuit noted that the facts alleged in the plaintiffs' tort claim were "precisely the same" as those in the plaintiffs' breach-of-contract claim.  749 F.2d at 24.  The Tenth Circuit held that, because the parties had chosen to define their rights and duties regarding rental payments in contract, the parties' leases preclude "any extracontractual duty regarding such payments."  749 F.2d at 24.  The Tenth Circuit has explained that this contractual preclusion of tort claims occurs "because parties should 'be bound by the terms of written agreements to which they freely commit themselves.'"  Elliott Indus., 407 F.3d at 1116 (quoting Rio Grande Jewelers Supply, Inc. v. Data Gen. Corp., 101 N.M. at 800, 689 P.2d at 1271).

- 37 -

Additionally, the Tenth Circuit has explained that the "hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue." Elliott Indus., 407 F.3d at 1117.  In Elliott Indus., for example, the Tenth Circuit held that the plaintiffs' leases with ConocoPhillips that defined ConocoPhillips' royalty obligations preluded the plaintiffs' claims that ConocoPhillips' royalty payment practices unjustly enriched it at the plaintiffs' expense.  The plaintiffs contended that the leases did not preclude their claim for unjust enrichment, because, the plaintiffs alleged, the leases did not contain an express contractual provision covering ConocoPhillips' deduction of a thirty-nine percent processing fee from the plaintiffs' royalty payments.  The Tenth Circuit reasoned, however, that although "the contracts may not delineate any specific deductions," the leases "control how royalties are to be paid."  407 F.3d at 1117.  The Tenth Circuit held, therefore, that the district court properly granted ConocoPhillips summary judgment on the plaintiffs' unjust enrichment claim, because "the claim for underpayment of royalties is grounded in the parties' contractual relationships."  407 F.3d at 1117.

## COLORADO LAW REGARDING UNJUST ENRICHMENT

Under Colorado law, unjust enrichment is "a judicially created remedy designed to avoid benefit to one to the unfair detriment of another."  Salzman v. Bachrach, 996 P.2d 1263, 1265 (Colo. 2000)(en banc).  "In Colorado, a plaintiff seeking recovery for unjust enrichment must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying."  Salzman v. Bachrach, 996 P.2d at 1265-66.  The defendant does not need to "appreciate and accept the benefit

conferred."  Salzman v. Bachrach, 996 P.2d at 1266 n.2 (explaining that the Supreme Court of Colorado "reformulated the elements of unjust enrichment . . . to remove the test language that the defendant must appreciate and accept the benefit conferred").  Unjust enrichment is a form of quasi-contract or a contract implied in law, "does not depend on any contract, oral or written," and "does not require any promise or privity between the parties."  Salzman v. Bachrach, 996 P.2d at 1265.

"In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract."  Interbank Invs., LLC v. Eagle River Water & Sanitation Dist., 77 P.3d 814, 816 (Colo. Ct. App. 2003).  Colorado courts have recognized two exceptions to this rule: (i) "when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract"; and (ii) "when the party will have no right under an enforceable contract," such as when "an express contract failed or was rescinded."  Interbank Invs., LLC v. Eagle River Water & Sanitation Dist., 77 P.3d at 816 (citations omitted)(internal quotation marks omitted).

## ANALYSIS

The Court will grant the MTD and dismiss the Plaintiffs' unjust enrichment claims against WFC/WER.  Although the parties did not raise the choice-of-law issue, the Court first considers whether there is a conflict between New Mexico and Colorado law, concluding that, following New Mexico's choice-of-law analysis, there is no actual conflict, because the result under both states' substantive laws in this case is the same.  See Fowler Brothers, Inc. v. Bounds,

2008-NMCA-091, ¶ 20 (finding no actual conflict[4] between Arizona and New Mexico law, because "the law of both states *as applied to the present case* would achieve the same outcome" and preclude recovery (emphasis in original)).   Thus, the Court will apply New Mexico law as the forum law and dismiss the Plaintiffs' unjust enrichment claim.

## I.   UNDER NEW MEXICO'S CHOICE-OF-LAW ANALYSIS, THERE IS NO ACTUAL CONFLICT BETWEEN THE UNJUST ENRICHMENT LAWS OF NEW MEXICO AND COLORADO AS APPLIED IN THIS CASE.

The parties did not mention the potential choice-of-law problems in this case and argued only New Mexico law, but the Court notes that there is a question whether it should apply Colorado or New Mexico substantive law, because the San Juan Basin is located in Colorado and New Mexico, some of the wells are located in both states, and one of the processing plants -- the Ignacio Plant -- is located in Colorado.  See TAC ¶¶ 6-7, at 3.  A federal court applies the choice-of-law rules of the forum state in which it sits.   See Memorial Hosp. of Laramie County v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir.2007). The Court therefore applies New Mexico choice-of-law principles.   City of Raton v. Arkansas River Power Auth., 611 F.

---

[4] The Court of Appeals of New Mexico uses the term "false conflict," but the Supreme Court of New Mexico uses the term "actual conflict" to refer to the same doctrine, because

"false conflict" actually has two different meanings.  See Robert A. Leflar et al., American Conflicts Law, § 92, at 270 (4th ed. 1986).  The first meaning of "false conflict" arises from the choice-of-law method advanced by Professor Brainerd Currie, "the governmental interest" analysis.  Id. at 270-71.  Under Currie's method, a false conflict arises when "only one of the involved states would be interested in applying its law."  Eugene F. Scoles et al., Conflict of Laws § 2.9, at 28 (4th ed. 2004).  The second meaning of the term "false conflict" is "no conflict of laws."  Leflar et al., supra, § 92, at 272.

Ferrell v. Allstate Ins. Co., 2008-NMSC-042, ¶ 16 n.2.  The Court will use the term "actual conflict" as the Supreme Court of New Mexico uses the term.

Supp. 2d 1190, 1203 (D.N.M. 2008).  The Court must apply New Mexico's choice-of-law rules when determining which state's substantive law applies, including its "actual conflict" doctrine.

In <u>Fowler Brothers, Inc. v. Bounds</u>, the Court of Appeals of New Mexico addressed the choice-of-law question in the context of an unjust enrichment claim, but, because the laws of the two states implicated -- Arizona and New Mexico -- did not conflict, the Court of Appeals of New Mexico stated that there was no actual conflict, and did not explain how it would have determined which states' law applied had there been an actual conflict.  <u>See</u> 2008-NMCA-091, ¶ 20.  The Court of Appeals of New Mexico determined that there was not an actual conflict between Arizona and New Mexico law on unjust enrichment, because, although there were differences, including that Arizona's policy was more lenient than New Mexico's, that difference would not make a difference in the outcome.  <u>See</u> 2008-NMCA-091, ¶¶ 19-20.

The Court is hesitant to dispose of the choice-of-law question based on a conclusion that Colorado and New Mexico law do not differ or conflict.  Under Colorado law, the defendant does not need to "appreciate and accept the benefit conferred," <u>Salzman v. Bachrach</u>, 996 P.2d at 1266 n.2, while New Mexico law requires a plaintiff prove that the defendant "has been knowingly benefitted" at the plaintiff's expense, <u>see</u> <u>Ontiveros Insulation Co. v. Sanchez</u>, 2000-NMCA-051, ¶ 11.  Further, as the Court will explain in its analysis of New Mexico unjust enrichment law, New Mexico law is not settled -- by an opinion from the Supreme Court of New Mexico -- whether a plaintiff is barred from pursuing an unjust enrichment claim when there is a contract governing the same subject matter with a different party.  Colorado law, on the other hand, speaks more clearly to this issue, and bars unjust enrichment claims unless the unjust enrichment claim covers conduct outside the express contract or if the party does not have a right

under an enforceable contract.  See Interbank Investments, LLC v. Eagle River Water & Sanitation Dist., 77 P.3d at 816.  For these reasons, the Court is hesitant to say that there is not a conflict between Colorado's and New Mexico's unjust enrichment laws.  See City of Raton v. Ark. River Power Authority, 760 F. Supp. 2d 1132, 1155 (D.N.M. 2009)(Browning, J.)(noting that the "differences between Colorado and New Mexico law for rescission are subtle," that they "may or may not [a]ffect the ultimate determination of the claims," and, thus, refusing to apply the false conflict doctrine).  The Court notes, however, that it must apply New Mexico's choice-of-law analysis, including its actual conflict doctrine.  Under New Mexico's articulation of the actual conflict doctrine, there is no actual conflict between Colorado and New Mexico law as applied in this case, because the result is the same under either state's substantive law.  See Fowler Brothers, Inc. v. Bounds, 2008-NMCA-091, ¶ 9 ("[T]he focus of the doctrine is not on whether the laws are superficially identical as written, but whether the effect of laws would be identical as applied to a particular case."); City of Raton v. Ark. River Power Authority, 611 F. Supp. 2d 1190, 1205 (D.N.M. 2008)(Browning, J.)(quoting Fowler Brothers, Inc. v. Bounds, and holding that the false conflict doctrine permitted the Court to apply New Mexico law, because, "on the issues present on this motion, New Mexico and Colorado law appear to lead to a similar result").  In this case, the Court has analyzed the unjust enrichment claims under Colorado and New Mexico law, as it explains in the following analysis sections, and reaches the same conclusion -- that it should dismiss the unjust enrichment claims against WFC/WER.  Thus, under New Mexico choice-of-law analysis, there is no conflict between Colorado and New Mexico unjust enrichment law as applied in this case.

## II.     <u>THE UNJUST ENRICHMENT CLAIM FAILS UNDER NEW MEXICO LAW</u>.

The Tenth Circuit's decision in <u>Elliott Indus.</u> constrains, in part, the Court's ability to make an independent determination whether the Supreme Court of New Mexico would allow an unjust enrichment claim to proceed in this situation, where the Plaintiffs have also brought a breach-of-contract claim for the same subject matter against a different party.  Keeping in mind the Tenth Circuit's interpretation of New Mexico law, and after looking to New Mexico cases on unjust enrichment, the Court concludes that the Supreme Court of New Mexico would dismiss the unjust enrichment claims, because the Plaintiffs have not alleged that they lack a viable breach-of-contract claim against WPX Energy, and have not shown that allowing WFC/WER to retain the benefits would be unjust.

### A.     THE TENTH CIRCUIT IN <u>ELLIOTT INDUS.</u> INTERPRETED NEW MEXICO UNJUST ENRICHMENT LAW, CONSTRAINING THE COURT FROM FULLY MAKING AN INDEPENDENT DETERMINATION ON <u>NEW MEXICO LAW</u>.

The parties disagree whether the Tenth Circuit's determination of New Mexico law in <u>Elliott Indus.</u> -- which the Honorable Michael R. Murphy wrote, and in which the Honorable Stephanie K. Seymour and the Honorable Monroe G. McKay joined -- binds the Court in this case; WFC/WER argue that <u>Elliott Indus.</u>, although involving plaintiffs and defendants who were in privity with each other, stands for the broader principle that, when a contract exists that governs the subject of the unjust enrichment claim, courts should dismiss the unjust enrichment claims, while the Plaintiffs argue that <u>Elliott Indus.</u> forecloses unjust enrichment claims only when the parties have a contractual relationship.  The Court concludes that WFC/WER read <u>Elliott Indus.</u> too broadly, but that the Plaintiffs do not give all the Tenth Circuit's language its proper due.

- 43 -

In Elliott Indus., the plaintiff royalty owners sued ConocoPhillips Company, the working interest owner, to collect additional royalties; the plaintiffs alleged that ConocoPhillips was underpaying their royalty interests by reducing their royalties with illegitimate post-production costs, including a 39% in-kind assessment of NGLs that the defendants retained as compensation for processing the gas.  See 407 F.3d at 1100.  The plaintiffs did not assert "an unequivocal and straight-forward contract claim" for the royalty underpayments, and "steadfastly disclaim[ed] any cause of action for breach of an express contract."   407 F.3d at 1107.  The Tenth Circuit noted that Elliott Industries' decision not to pursue a breach-of-contract claim was likely strategic, because, "[p]resumably, pleading a breach of contract claim on behalf of approximately 10,000 royalty owners would have made class certification less likely."  407 F.3d at 1107 n.10 (citing Fed. R. Civ. P. 23(a)(2) (commonality)).  "In lieu of a claim for breach of an express contract, Elliott has asserted claims such as breach of implied covenants, conversion, fraud, and unjust enrichment.  Each of these alternative claims is built upon and dependent on the underlying express contractual obligation to pay royalties."  407 F.3d at 1108.

The district court, relying on Ontiveros Insulation Co. v. Sanchez, granted summary judgment against the plaintiffs on the unjust enrichment claim, concluding that "because the [unjust enrichment] claim arises in equity it cannot exist where, as here, the parties are in privity of contract."  407 F.3d at 1116.  The plaintiffs appealed, arguing that Ontiveros Insulation Co. v. Sanchez does not automatically bar unjust enrichment claims when the parties are also in a contractual relationship, and that, even if Ontiveros Insulation Co. v. Sanchez bars claims when a contractual provision governs, the contracts between the plaintiffs and the defendants did not govern the thirty-nine percent processing fee.  See 407 F.3d at 1117.  The Tenth Circuit affirmed

the district court's judge, and, quoting <u>Ontiveros Insulation Co. v. Sanchez</u>, stated that "'equity does not take the place of remedies at law, it augments them; in this regard, an action in contract would be preferred to one in quasi-contract.'"   407 F.3d at 1117 (quoting <u>Ontiveros Insulation Co. v. Sanchez</u>, 3 P.3d at 699).  The Tenth Circuit said:

> "[T]he hornbook rule [is] that quasi-contractual remedies . . .  are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue.  Courts have recognized this principle and have stated their unwillingness to resort to the doctrine of unjust enrichment to override a contractual [ ] provision."

407 F.3d at 1117 (alterations in original)(quoting <u>Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa</u>, 130 F.3d 950, 957 (10th Cir. 1997)).   The Tenth Circuit also cited <u>Williston on Contracts</u>, which states: "'Where the plaintiff has no alternative right on an enforceable contract, the basis of the plaintiff's recovery is the unjust enrichment of the defendant.'"  407 F.3d at 1117 (quoting 26 Richard A. Lord, <u>Williston on Contracts</u> § 68:5 (4th ed. 2004)).  The Tenth Circuit affirmed the district court's decision to grant summary judgment against Elliott Industries on unjust enrichment, because "the claim for underpayment of royalties is grounded in the parties' contractual relationship."  407 F.3d at 1117.  The Tenth Circuit acknowledged that the contracts did not delineate any specific deductions, but stated that "the contracts control how royalties are to be paid.  Indisputably, there are contracts between the parties, thus any claim for underpayment of royalties, including a claim for unjust enrichment, must begin with those contracts."  407 F.3d at 1117.

As the Tenth Circuit has explained, "when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has

resolved the issue." Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003). Although the Tenth Circuit in Elliott Indus. addressed unjust enrichment in the context of royalty underpayments, the situation involved plaintiffs who had a contractual relationship with the defendants; the contracts governed the royalty payments, precluding an unjust enrichment claim. Unlike Elliott Indus., the Plaintiffs do not have contracts with WFC/WER; the Plaintiffs' contracts are with WPX Energy, and WPX Energy has contracts with WFC/WER. This difference is significant, because, at least with respect to WFC/WER and the Plaintiffs, a contract does not govern their relationship. Elliott Indus. does not speak to this precise situation, and thus the Court believes that there is some room for it to interpret New Mexico law. The Court also recognizes, however, that the Tenth Circuit's interpretation of New Mexico law constrains its interpretation of New Mexico law, particularly if it concludes, as it does, that Elliott Indus. left it some room for an independent interpretation of New Mexico unjust enrichment law when the defendant does not have a contract with the plaintiff. Specifically, the Court's independent analysis must still conform to the Tenth Circuit's, at times, broad language in Elliott Indus. regarding unjust enrichment. For example, the Tenth Circuit focused on the language in Ontiveros Insulation Co. v. Sanchez in which the Court of Appeals of New Mexico explained that "'an action in contract would be preferred to one in quasi-contract.'" Elliott Indus., 407 F.3d at 1117 (quoting Ontiveros Insulation Co. v. Sanchez, 3 P.3d at 699). The Tenth Circuit explained that the Honorable LeRoy Hansen, Senior United States District Judge for the District of New Mexico -- the judge who decided Elliott Indus. at the district level -- interpreted Ontiveros Insulation Co. v. Sanchez "to mean that the presence of a contract bars a claim for unjust enrichment," and held that "Elliott's unjust enrichment claim fails, like Elliott's other

extracontractual claims addressed above, because the claim for underpayment of royalties is grounded in the parties' contractual relationship."  407 F.3d at 1117.  The Tenth Circuit went on to cite a Tenth Circuit case that stated "quasi-contractual remedies are not to be created when an enforceable express contract regulates the relations of the <u>parties</u> with respect to the disputed issue.  Courts have recognized this principle and have stated their unwillingness to resort to the doctrine of unjust enrichment to override a contractual provision."  407 F.3d at 1117 (alterations omitted)(emphasis added)(quoting <u>Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa</u>, 130 F.3d at 957).  While read in one sense to apply when there is a contract between the <u>parties</u>, this principle may be applied to a broader situation, when a contract regulates the subject matter that is at dispute in the unjust enrichment claim.  Finally, the Tenth Circuit cited <u>Williston on Contracts</u>, which states: "'Where the plaintiff has no alternative right on an enforceable contract, the basis of the plaintiff's recovery is the unjust enrichment of the defendant.'"  407 F.3d at 1117.  The statement from <u>Williston on Contracts</u> is not tied to a situation in which the plaintiff had a contract with the defendant; the statement could apply equally to a situation in which the plaintiff has an alternative right on an enforceable contract with a third party, similarly barring the unjust enrichment claim against the defendant.  Although the Tenth Circuit did not address this precise situation, its interpretation of New Mexico law at the very least expresses a reticence to permit an unjust enrichment claim to proceed when there are contractual remedies.  The factual circumstances in <u>Elliott Indus.</u> are distinguishable from the current case, but the Tenth Circuit, in reaching its decision, interpreted New Mexico law on unjust enrichment; the Court is bound not only by the Tenth Circuit's holding, but by the Tenth Circuit's interpretation of New Mexico law.  Thus, the Court will similarly view New Mexico

- 47 -

law as reluctant to permit unjust enrichment claims to proceed when there are enforceable contracts governing the same subject matter.

      **B.**    **NEW MEXICO LAW ALLOWS THE PLAINTIFFS TO PURSUE UNJUST ENRICHMENT CLAIMS WHEN THOSE CLAIMS ARE THE SUBJECT OF A CONTRACT BETWEEN THE PLAINTIFF AND A DIFFERENT PARTY, BUT NOT WHEN THE PLAINTIFF CAN PURSUE THE <u>CONTRACT CLAIM.</u>**

WFC/WER argue that the Court should dismiss the Plaintiffs' unjust enrichment claim against them, because the claim involves the same issues that are the subject of the breach-of-contract claims against WPX Energy.  WFC/WER point to several cases -- none of which are from New Mexico -- where courts have dismissed unjust enrichment claims against third parties when the claim involves the issues that are the subject of a contract.  <u>See</u> MTD at 6 (citing <u>Randall's Island Aquatic Leisure, LLC. V. City of New York</u>, 938 N.Y.S.2d at 62; <u>Belino Schwartz Padob Advertising, Inc. v. Solaris Marketing Group Inc.</u>, 635 N.Y.S.2d at 588; <u>Pepi Corp. v. Galliford</u>, 254 S.W.3d at 462).  WFC/WER's proposed rule is too broad, however, because New Mexico courts have permitted plaintiffs to bring unjust enrichment claims against third parties to recover what would otherwise be the subject of a contract.  In <u>Ontiveros Insulation Co. v. Sanchez</u>, the defendant homeowners contracted with a general contractor to build their homes, and the general contractor purchased building materials from plaintiff Rawson, Inc. Builders Supply, and hired plaintiff Ontiveros Insulation Co., Inc. to install insulation and a heating system.  <u>See</u> 2000-NMCA-051, at ¶ 2.  Ontiveros Insulation completed the installation, but before construction completed, the general contractor declared bankruptcy.  <u>See</u> 2000-NMCA-051, at ¶ 3.  The homeowners had paid the general contractor a portion of the original contract price, but the general contractor had not paid Ontiveros Insulation or Rawson

for their labor or materials.  See 2000-NMCA-051, at ¶ 3.  The homeowners completed the houses by other means and the subcontractors filed liens on the homes, but before they could enforce the liens, the homeowners defaulted on their mortgages, the mortgagor foreclosed on the properties, and the homeowners exercised their rights of redemption, and reclaimed the properties free and clear of any liens.  See 2000-NMCA-051, at ¶¶ 4-5.  The subcontractors sought relief from the general contractor, but their claims were discharged in the general contractor's bankruptcy.  See 2000-NMCA-051, at ¶ 5.  The subcontractors sued the homeowners, "claiming that Homeowners had been unjustly enriched by the uncompensated value which the labor and materials added to the homes."  2000-NMCA-051, at ¶ 6.  The district court dismissed the claims, because the homeowners "had paid more than their original contract price for the homes and, therefore, had not been enriched."  2000-NMCA-051 ¶ 6.

The question presented to the Court of Appeals of New Mexico asked: "Are Homeowners entitled to prevail on their claim that any enrichment was not 'unjust'?"  2000-NMCA-051 ¶ 10.  The Court of Appeals of New Mexico, in an opinion written by the Honorable Christina M. Armijo, then-Judge for the Court of Appeals of New Mexico and now Chief Judge for the United States District Court for the District of New Mexico, and joined in by the Honorable Richard C. Bosson, then-Judge for the Court of Appeals of New Mexico and now Justice for the Supreme Court of New Mexico, and the Honorable James J. Wechsler, said that "New Mexico has long recognized actions for unjust enrichment, that is, in quantum meruit or assumpsit."  2000-NMCA-051 ¶ 11 (citing Tom Growney Equip., Inc. v. Ansley, 1994-NMCA-159, 119 N.M. 110, 112, 888 P.2d 992, 994).

> To prevail on such a claim, one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to

retain the benefit would be unjust.  The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity.

2000-NMCA-051 ¶ 11 (citations omitted).  The Court of Appeals of New Mexico acknowledged that "[s]ubcontractors' suits against property owners are generally not favored," but noted that the disfavor "is a reflection of the jurisprudence of equity.  Simply, equity does not take the place of remedies at law, it augments them; in this regard, an action in contract would be preferred to one in quasi-contract."  2000-NMCA-051 ¶ 12.  The Court of Appeals of New Mexico refused to "apply this traditional reticence regarding consideration of equitable relief," 2000-NMCA-051 ¶ 13, and instead looked to the particular equities involved, see 2000-NMCA-051 ¶ 13.  The Court of Appeals of New Mexico focused on whether the homeowners were unjustly enriched at the subcontractors' expense, and concluded that they were unjustly enriched, because (i) the homeowners paid forty-two percent and sixty-one percent on the underlying contracts to the general contractors, which was "not very substantial," 2000-NMCA-051 ¶ 18 (internal quotation marks omitted); the subcontractors provided approximately $14,000.00 in labor and materials, which added value to the homes, but did not receive any compensation; the homeowners never paid $65,000.00 out of $136,000.00 they agreed to pay under the original contracts; and the homes' appraisal values were $40,000.00 more than the homeowners expended, see 2000-NMCA-051 ¶ 18.  Although the homeowners had to hire others to finish the work that the general contractor started but could not finish, the Court of Appeals of New Mexico focused on "whether Homeowners paid to the general contractor a very substantial part of the original contract price," because that answer bore on whether the subcontractors got paid.  See 2000-NMCA-051 ¶ 19.  The homeowners argued that they were not aware of the general contractor's

contracts with the subcontractors; the Court of Appeals of New Mexico said that the "district court did not abuse its discretion in determining on the stipulated facts that Homeowners should have known such services and materials would be provided," considering the price of the homes at issue. 2000-NMCA-051 ¶ 20. The Court of Appeals of New Mexico determined that the "equities weigh heavily in Subcontractors' favor," because "the subcontractors pursued all possible remedies before turning to the present action. Indeed, but for Homeowners' mortgage defaults and the resulting foreclosure and redemption, Subcontractors could claim an adequate remedy at law without resort to equity." 2000-NMCA-051 ¶ 21. In affirming the district court's ruling holding the homeowners liable to the subcontractors, the Court of Appeals of New Mexico concluded that

> recovery on such an action may not be had in every instance where a subcontractor has furnished labor or materials which benefit a third person with whom there is no privity of contract. Our decision today is limited to affirming the propriety of quasi contract as a remedy in a particular factual situation. Each case must be decided according to the essential elements of quasi contract. The most significant requirement for a subcontractor's successful recovery is that the enrichment be unjust. In the present case, Subcontractors exhausted their remedies against the person with whom they contracted, namely, Parker. Despite those efforts, they did not receive any value for the labor and services rendered. Although Homeowners paid over sums of money to Parker, Homeowners were never specifically put on notice that their payments to Parker, or any portion thereof, were intended to pay for the labor and materials furnished to the residences.

2000-NMCA-051 ¶ 22.

Ontiveros Insulation Co. v. Sanchez reveals that at least the Court of Appeals of New Mexico does not automatically foreclose unjust enrichment claims, even when the basis of the claim is also the subject of a contract with another party. In Ontiveros Insulation Co. v. Sanchez, the Court of Appeals of New Mexico noted that the plaintiffs pursued their options on the

underlying contracts, and after the attempts to recover on the contracts failed, the Court of Appeals of New Mexico allowed the plaintiffs to pursue their equitable claims.[5]

The circumstances in Ontiveros Insulation Co. v. Sanchez were unique, however, as even the Court of Appeals of New Mexico recognized.  See 2000-NMCA-051, ¶ 12 ("Subcontractors' suits against property owners are generally not favored.").  In Hydro Conduit Corp. v. Kemble, 1990-NMSC-061, 110 N.M. 173, 793 P.2d 855, the Supreme Court of New Mexico discussed a subcontractor's unjust enrichment claim against the state, noting that the subcontractor could not pursue a contract claim against the general contractor, because the general contractor was defunct and its principal stockholder and officer was insolvent.  See 110 N.M. at 174, 793 P.2d at 856.  The Supreme Court of New Mexico discussed the general disfavor against subcontractor unjust enrichment claims against property owners:

> Where a subcontractor seeks restitution from a landowner whose property has been improved by the subcontractor's performance, the subcontractor's contract right is against the general (or prime) contractor, but if that remedy is inadequate,

---

[5] The Tenth Circuit cited Ontiveros Insulation Co. v. Sanchez in Elliott Indus., but the Tenth Circuit applied the portion of Ontiveros Insulation Co. v. Sanchez in which the Court of Appeals of New Mexico discussed the general disfavor for quasi-contract actions when a contract controls, see Elliott Indus., 407 F.3d at 1116-17; the Tenth Circuit did not discuss the next part of the New Mexico decision, which focused on the specific equities of the case, where the Court of Appeals of New Mexico determined that the parties could not pursue a contract claim against the general contractor and allowed equity to provide a remedy through unjust enrichment against the homeowners.

Although the plaintiffs in Elliott Indus. did not pursue a straight breach-of-contract theory, a contract governed their relationship with the defendants.  See 407 F.3d at 1109, 1117.  The Tenth Circuit determined that the plaintiffs could not pursue quasi-contractual remedies "'when an enforceable express contract regulates the relations of the parties with respect to the disputed issue.'"  407 F.3d at 1117 (emphasis added)(quoting Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa, 130 F.3d at 957).  The plaintiffs in Elliott Indus. did not allege that the contracts were unenforceable, whereas the plaintiffs in Ontiveros Insulation Co. v. Sanchez demonstrated that, because the general contractor went bankrupt, they could not pursue their contract claims.

as it will be when the prime contractor is insolvent, restitution frequently is sought
from the landowner, but nearly always denied.

110 N.M. at 176, 793 P.2d at 858 (alterations omitted)(quoting 2 G. Palmer, The Law of

Restitution § 10.7(b), at 423 (1978)).  The Supreme Court of New Mexico did not determine

whether the subcontractor in the suit could pursue an unjust enrichment claim, because the

Supreme Court of New Mexico left "for another day" the following issues:

> (1) whether a property owner can ever be liable to a subcontractor for unjust
> enrichment; (2) whether and to what extent payment by the property owner to the
> general (or another) contractor for the services or materials furnished by the
> subcontractor will bar the latter's claim for unjust enrichment; and (3) whether, if
> the property owner receives compensation from a collateral source, the
> subcontractor may pursue a claim for unjust enrichment.

110 N.M. at 176-77, 793 P.2d at 858-59.  The Supreme Court of New Mexico then addressed the

question before it on appeal, namely, "whether a claim for unjust enrichment is 'based on

contract'" for purposes of the immunity statute.  110 N.M. at 177, 793 P.2d at 859.  The Supreme

Court of New Mexico concluded that, "even though an action for unjust enrichment is not 'based

on contract' in a strict theoretical sense, it is so closely related to an action which *is* so based"

that the immunity statute "should be construed to extend immunity to an unjust enrichment claim

as well as to a claim founded on a true, but unwritten, contract."  110 N.M. at 179, 793 P.2d at

861 (emphasis in original).

     In Sundance Mechanical & Utility Corp. v. Atlas, 1994-NMSC-084, 118 N.M. 250, 880

P.2d 861, the Supreme Court of New Mexico held that a subcontractor did not have an unjust

enrichment claim against property owners who had paid a substantial portion of the contract

price to the general contractor.  See 118 N.M. at 255, 880 P.2d at 866.  The Supreme Court of

- 53 -

New Mexico said that, in that situation, the subcontractor's claims should be against the general contractor and not against the property owner.  See 118 N.M. at 255, 880 P.2d at 866.

The Court recognizes that this case does not involve subcontractor suits against property owners, but finds that the situation is analogous.  Just as New Mexico courts disfavor subcontractor suits against property owners, the Court believes that New Mexico courts would likewise disfavor an unjust enrichment claim against a third party when that claim involves the same subject as a contract, unless there is something preventing the plaintiffs from pursuing the contract claims.  The Court concludes that, under New Mexico law, the existence of a contract with a different party does not automatically bar the unjust enrichment claim, but the plaintiff cannot pursue the unjust enrichment claim unless there is something -- bankruptcy, statutes -- prohibiting the plaintiff from pursuing the contract claim.

The Restatement (Third) of Restitution and Unjust Enrichment § 25 also supports the Court's conclusion; that section describes that restitution is available after a claimant has rendered a contractual performance to a third person, the claimant has not received the promised compensation, and the uncompensated performance confers a benefit onto the defendant. § 25(1).   The Restatement (Third) of Restitution and Unjust Enrichment rule lists three conditions: (i) "[l]iability in restitution may not subject the defendant to a forced exchange"; (ii) "[a]bsent liability in restitution, the claimant will not be compensated for the performance in question, and the defendant will retain the benefit of the claimant's performance free of any liability to pay for it"; and (iii) "[l]iability in restitution will not subject the defendant to an obligation from which it was understood by the parties that the defendant would be free." Restatement (Third) of Restitution and Unjust Enrichment § 25(2)(a)-(c).   The comments

- 54 -

elaborate that the second requirement -- without the unjust enrichment claim, the claimant will not be compensated for the performance -- will not be satisfied "where A attempts to recover from B in restitution instead of pursuing a viable contract claim against C," and provides an illustration:

> Buyer contracts with Developer for the purchase of a newly-constructed house and with Nurseryman for the installation of shrubbery.  Nurseryman completes performance before the house is completed and submits an invoice to Buyer for $1000.  Shortly before the date fixed for closing of the house purchase, Buyer dies.  Nurseryman's invoice has not been paid.  Developer cancels the contract by an agreement with Buyer's estate under which neither party pays anything to the other; Developer then sells the house (including the shrubbery) to another purchaser. Nurseryman sues Developer in restitution.  Nurseryman's performance increased the value of the real estate by $1000; Developer obtained $500 of this added value on resale of the property.  The court finds that Nurseryman still has a viable contract claim against Buyer's estate.  Nurseryman has no claim against Developer (§ 25(2)(b)), notwithstanding that Developer has been enriched at Nurseryman's expense.

Restatement (Third) of Restitution and Unjust Enrichment § 25, illustration 3.   Under this example, the claimant had a viable contract claim with a third party, and, thus, was not permitted to proceed on the unjust enrichment claim against the defendant.  Although no courts in New Mexico have cited this provision, New Mexico courts often look to Restatement provisions to help determine what to do in a given case.  For example, the Supreme Court of New Mexico cited the Restatement (First) of Restitution § 1 in Hydro Conduit Corp v. Kemble, explaining that "tort, contract and restitution are the three primary areas in the overall classification of the law."  Hydro Conduit Corp. v. Kemble, 110 N.M. at 178, 793 P.2d at 860.  Similarly, the Court of Appeals of New Mexico has relied on the Restatement (First) of Restitution § 42 to determine that an owner of equipment that was repaired without his request was not "enriched unjustly."

Tom Growney Equipment, Inc. v. Ansley, 119 N.M. at 113, 888 P.2d at 995.  As the Honorable

William Johnson, United States District Judge for the District of New Mexico, has noted,

> New Mexico courts recognize that restitution is an equitable remedy, and often
> look to the Restatements for guidance in considering restitution claims.  See e.g.,
> Eker Bros., Inc. v. Rehders, 2011-NMCA-091 ¶ 8, ¶ 18, 150 N.M. 542, 263 P.3d
> 319, 321-323 (acknowledging that "[t]raditionally, restitution is thought of as an
> equitable remedy" and applying the Restatement (Second) of Contracts § 374
> regarding restitution in favor of party in breach to award the value of benefits
> conferred in excess of the loss caused by that party's own breach of the contract.).

Wagner v. Galbreth, 500 B.R. 42, 52 (D.N.M. 2013)(Johnson, J.).  Judge Johnson then looked

the Restatement (Third) of Restitution to determine when a party is entitled to restitution.  See

Wagner v. Galbreth, 500 B.R. at 52.  The Court finds that the Restatement (Third) of Restitution

and Unjust Enrichment § 25 is persuasive in determining that the New Mexico Supreme Court

would not permit a plaintiff to pursue an unjust enrichment claim against a third party when there

is a viable breach-of-contract claim covering the same subject matter.

### C.   NEW MEXICO DOES NOT REQUIRE THE PARTIES IN AN UNJUST ENRICHMENT ACTION TO BE CLOSELY CONNECTED.

WFC/WER argue that their relationship with the Plaintiffs is too attenuated to support an

unjust enrichment claim; to support this argument, WFC/WER draw on cases from outside New

Mexico.  See MTD at 7.  WFC/WER point to Georgia Malone Co. v. Rieder, in which the

plaintiff -- a real estate broker -- had prepared due diligence reports for a developer; the

developer then provided the due diligence reports to a rival broker and that rival broker obtained

the commission on the ultimate sale of the properties.  See 973 N.E.2d at 744-45.  The Court of

Appeals of New York held that the plaintiff did not have a sufficient relationship with the rival

broker to support the unjust enrichment claim.  See 973 N.E.2d at 747.  WFC/WER point

specifically to the Court of Appeals of New York's concern that allowing the plaintiff's unjust

enrichment claim "would require parties to probe the underlying relationships between the businesses with whom they contract and other entities tangentially involved but with whom they have no direct connection.   This would impose a burdensome obligation in commercial transactions."   973 N.E.2d at 748.   While this requirement -- that parties must be sufficiently connected before an unjust enrichment claim can proceed -- may make business sense, the Court is reluctant to rely on cases outside of New Mexico when New Mexico courts have not relied upon them, and doing so would add a requirement to unjust enrichment claims that New Mexico courts has not required.   Further, the Court does not think that WFC/WER's concerns regarding having to "probe the underlying relationships" is a legitimate concern under New Mexico law: to prevail on a claim for unjust enrichment under New Mexico law, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust."   Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11.   The party receiving the benefit has to know that he has received a benefit. See Ontiveros Insulation Co. v. Sanchez, 2000-NMCA-051, ¶ 11 (citing Restatement (First) of Restitution § 41, which states that "[a] person who has rendered services to another or services which inured to the other's benefit, is not entitled to compensation therefor if the services were rendered . . . without the other's knowledge or reason to know of them . . . .").   Thus, although New Mexico law does not require a certain degree of connection between the parties for unjust enrichment, it requires that the party benefiting from another does so knowingly.   The more attenuated their relationship, the less likely it is that a defendant would be aware that it is receiving a benefit at the plaintiff's expense.

**D.    STARKO, INC. V. PRESBYTERIAN HEALTH PLAN, INC. DOES NOT REFLECT WHAT THE SUPREME COURT OF NEW MEXICO WOULD DO WITH THE UNJUST ENRICHMENT CLAIMS IN THIS CASE.**

The parties disagree as to the applicability of Starko, Inc. v. Presbyterian Health Plan, Inc. to the question whether the Plaintiffs may pursue an unjust enrichment claim against WFC/WER when the claim covers the same subject as the breach-of-contract claims against WPX Energy.  The Plaintiffs assert that Starko, Inc. v. Presbyterian Health Plan, Inc. shows that New Mexico law does not foreclose an unjust enrichment cause of action even when there may be a contract that governs the same or similar subject matter, while WFC/WER argue that the Court of Appeals of New Mexico decided the case based on a statute, making it distinguishable and inapplicable to the facts of this case.

Starko, Inc. v. Presbyterian Health Plan, Inc. involved a dispute under New Mexico's Medicaid managed care program, in which the New Mexico Human Services Department ("HSD") contracted with managed care organizations ("MCOs"), who in turn contracted with pharmacists, either directly or through intermediaries, and the pharmacists then provided prescription medications to Medicaid recipients.  2012-NMCA-053, ¶ 4.  The plaintiffs -- a certified class of pharmacists -- alleged that they were not properly reimbursed for their services under Medicaid.  See 2012-NMCA-053, ¶ 1.  A New Mexico statute, N.M. Stat. Ann. § 27-2-16(B), guaranteed that pharmacists would be paid certain rates; the pharmacists alleged that the MCOs were receiving those rates from the HSD, but not passing along to the pharmacists the full amount which the statute guaranteed to them.  See 2012-NMCA-053, ¶¶ 4-7.  The contracts between the HSD and the MCOs stated that the "subcontracts for pharmacy providers shall include a payment provision consistent with [§ 27-2-16(B)] unless there is a change in law or

regulation." 2012-NMCA-053, ¶ 10 (emphasis omitted)(internal quotation marks omitted)(explaining that § 27-2-16(B) remained the same as the version enacted in 1984). The contracts between the MCOs and the pharmacists provided that the MCOs would reimburse the pharmacists at the "'current and applicable Medicaid reimbursement rates,'" which the pharmacists alleged could be significantly lower than what § 27-2-16(B) required. 2012-NMCA-053, ¶ 6. Before the pharmacists entered the contracts with the MCOs, the pharmacists filed suit against the HSD, and pursuant to the district court's temporary restraining order, the HSD agreed that the pharmacists were not waiving their right to sue pursuant to § 27-2-16(B) by entering the contracts with the MCOs. See 2012-NMCA-053, ¶ 7. The pharmacists brought claims against the MCOs and HSD for "violation of § 27-2-16(B), breach of contract, breach of contract on a third-party beneficiary theory, unjust enrichment, declaratory relief, and injunctive relief." 2012-NMCA-053, ¶ 1.

The pharmacists alleged that the HSD breached the provider agreements that the pharmacists signed with the HSD before New Mexico transitioned to the managed care program. See 2012-NMCA-053, ¶ 69. The provider agreements "required providers to agree to terms regarding record keeping, payment, compliance with state and federal law, reimbursement by third parties, and other issues," which the pharmacists signed "in order to qualify for reimbursement from the Medicaid program." 2012-NMCA-053, ¶ 69 (internal quotation marks omitted). The pharmacists alleged that the provider agreements incorporated § 27-2-16(B), "because all relevant statutes are incorporated into contracts," and that the HSD "should have ensured that Plaintiffs were paid in accordance with Section 27-2-16(B) and, by failing to do so, they breached the provider contracts." 2012-NMCA-053, ¶ 72. The Court of Appeals of New

Mexico agreed that the provider agreements incorporated § 27-2-16(B), and held that, because the pharmacists were not paid the amount that the statute specified, they could sue the HSD for breach of contract.  See 2012-NMCA-053, ¶ 75.  Although the contracts that the pharmacists signed with the MCOs specified that they could not request payment from the HSD, the Court of Appeals of New Mexico held that the pharmacists did not waive their rights under the provider agreements, because they obtained the district court's order "requiring HSD to agree that Plaintiffs did not waive their rights by agreeing to participate in managed care."  2012-NMCA-053, ¶ 76.

The pharmacists also brought a third-party beneficiary breach-of-contract claim against the HSD and the MCOs; the pharmacists argued that the contracts between the HSD and the MCOs specified that the MCOs would pay the pharmacists consistent with § 27-2-16(B), that the MCOs failed to comply with that provision in the contract, and that the pharmacists were third-party beneficiaries of the contracts between the HSD and the MCOs.  See 2012-NMCA-053, ¶¶ 79-80.  The district court had determined that the Medicaid program was intended to benefit Medicaid enrollees rather than the pharmacists, and so dismissed the pharmacists' third-party beneficiary claim, but the Court of Appeals of New Mexico reversed and remanded, because "such a finding was a factual determination inappropriate to decide in a judgment on the pleadings."  2012-NMCA-053, ¶ 89.

The pharmacists sued the MCOs for breach of contract and unjust enrichment; the district court had dismissed the pharmacists' unjust enrichment claim, because they had an adequate remedy at law, and then subsequently dismissed the contract claims.  See 2012-NMCA-053, ¶ 90.  The Court of Appeals of New Mexico did not address the breach-of-contract claims, see

2012-NMCA-053, ¶ 7 n.4, but reversed the district court on the unjust enrichment claim, <u>see</u> 2012-NMCA-053, ¶¶ 91-94.  The district court found the pharmacists' unjust enrichment claim "'legally insufficient'" and dismissed it, "because it found they possessed 'a complete and adequate remedy at law . . . .   In this case, the party's actions are regulated by a contract [between the MCOs and HSD,] and Plaintiffs are seeking damages for breach of that contract.'" 2012-NMCA-053, ¶ 92 (quoting the district court opinion, but not giving citation).  The district court had relied on <u>Sims v. Sims</u>, 1996-NMSC-078, ¶ 28, 122 N.M. 618, 930 P.2d 153, but the Court of Appeals of New Mexico analyzed that case and determined that it indicated that the existence of a statutory remedy did not automatically foreclose an equitable remedy that addresses the same claim.  2012-NMCA-053, ¶ 93.  In <u>Sims v. Sims</u>, the Supreme Court of New Mexico explained that a statute will not replace equitable remedies unless the statute "provides with express language or necessary implication" that the Legislature intended to foreclose the traditional equitable remedies.  1996-NMSC-078, ¶ 30.  The Court of Appeals of New Mexico also cited <u>Hydro Conduit Corp. v. Kemble</u>, 110 N.M. 173, 178, 793 P.2d 855, 860 (1990), for the principle that "'unjust enrichment constitutes an independent basis for recovery in a civil-law action, analytically and historically distinct from the other two principal grounds for such liability, contract and tort.'"   <u>Starko, Inc. v. Presbyterian Health Plan, Inc.</u>, 2012-NMCA-053, ¶ 93 (quoting <u>Hydro Conduit Corp. v. Kemble</u>, 110 N.M. at 178, 793 P.2d at 860).  In <u>Hydro Conduit Corp. v. Kemble</u>, the Supreme Court of New Mexico determined that,

> even though an action for unjust enrichment is not "based on contract" in a strict theoretical sense, it is so closely related to an action which is so based that the [sovereign] immunity statute here . . . should be construed to extend immunity to an unjust enrichment claim as well as to a claim founded on a true, but unwritten contract.

110 N.M. at 179, 793 P.2d at 861 (emphasis omitted)(footnote omitted).  In reaching its decision

in Starko, Inc. v. Presbyterian Health Plan, Inc., the Court of Appeals of New Mexico also cited,

without explaining, Tom Growney Equip., Inc. v. Ansley, 1994-NMCA-159, 119 N.M. 110, 112,

888 P.2d 992, 994.  In that case, the Court of Appeals of New Mexico explained that a theory of

quantum meruit is distinct from a contract claim, and that, even without a contract governing the

relationship between a repairer who fixed the owner's equipment when the owner did not

authorize the repairs and was not aware of the services, the repairer "may have a claim for

restitution based upon a theory of quasi-contract (contract implied-in-law) to prevent unjust

enrichment."  119 N.M. at 112, 888 P.2d at 994.

After citing these New Mexico cases, the Court of Appeals of New Mexico in Starko,

Inc. v. Presbyterian Health Plan, Inc. reversed the district court's dismissal of the unjust

enrichment claim:

> [D]ismissal of Plaintiffs' claim for unjust enrichment on Presbyterian's motion for
> judgment on the pleadings was error.  Plaintiffs assert that the MCOs entered into
> valid contracts with HSD, ones in which the MCOs promised to pay in
> accordance with Section 27-2-16(B).  Plaintiffs allege further that HSD paid the
> MCOs to comply with the statute, but that those payments were at least partially
> retained by them.  Such pleadings are enough to state a claim in equity for unjust
> enrichment, and the fact that Plaintiffs had contracts with the MCOs does not
> work to automatically foreclose it.  Our system explicitly provides for alternative
> pleading of civil claims.  Rule 1-008(E)(2) NMRA.  We therefore leave open their
> claim for unjust enrichment.

2012-NMCA-053, ¶ 94.

The effect of allowing the pharmacists' unjust enrichment claim to survive a motion to

dismiss was that the pharmacists had three claims aiming for the same relief, namely, the

difference between the amounts that the pharmacists received from the MCOs and the amounts

to which they believed they were entitled under § 27-2-16(B): (i) the breach-of-contract claim

against the HSD, based on the provider contracts between the HSD and the pharmacists; (ii) the third-party beneficiary breach-of-contract claim against the MCOs, based on the contracts between the HSD and the MCOs; and (iii) the unjust enrichment claim against the MCOs.  These claims were separate from the pharmacists' breach-of-contract claim against the MCOs based on the contracts between the pharmacists and the MCOs, and the Court of Appeals of New Mexico stated that it was not addressing the breach-of-contract claims.  The Court of Appeals of New Mexico did not dismiss the unjust enrichment claim, even though there were two other claims, both based in contract, that had at least the potential to give the pharmacists the relief they requested.  It seems, under Starko, Inc. v. Presbyterian Health Plan, Inc., that whether a plaintiff has an "adequate remedy at law" does not foreclose the option of pursuing a claim in equity, at least not at the motion to dismiss stage.

Part of the Court of Appeals of New Mexico's analysis concerns the Court, because it is not sure that the cases cited necessarily support the broad propositions that the Court of Appeals of New Mexico represented.  For example, the Court of Appeals of New Mexico stated: "That Plaintiffs had a contractual relationship with the MCOs does not foreclose a claim for unjust enrichment," and cited Danley v. City of Alamogordo, 1978-NMSC-031, 91 N.M. 520, 577 P.2d 418, and Platco Corp. v. Shaw, 1967-NMSC-123, 78 N.M. 36, 428 P.2d 10.  In Danley v. City of Alamogordo, the City of Alamogordo, New Mexico, hired a contractor to lay a six-inch water line for a developing subdivision, but then, after realizing that the City's future plans would eventually require a ten-inch water line, the City asked the contractor to lay a ten-inch water line instead, which the contractor did.  See 91 N.M. at 521, 577 P.2d at 419.  When the contractor presented the bill for the additional material costs, the City stipulated that the additional cost was

reasonable, but it refused to pay the bill, because a statute required that the City solicit sealed bids for purchases, and New Mexico cases had held that, "where the mode of contracting is especially and plainly prescribed and limited, that mode is exclusive, and must be pursued, or the contract will not bind the municipality." 91 N.M. at 521, 577 P.2d at 419. The Supreme Court of New Mexico, under a quantum valebant theory, required the City to pay the contractor for the additional material costs. See 91 N.M. at 522, 577 P.2d at 420. The Supreme Court of New Mexico said that, "absent fraud, a municipality may not retain benefits conferred upon it by a Contractor who was induced to perform work and who in good faith performed it for the City." 91 N.M. at 522, 577 P.2d at 420. The Supreme Court of New Mexico permitted the contractor to pursue the unjust enrichment claim, but only because he could not pursue a contract claim; the statute prevented the City from entering a contract for the ten-inch water line without following the statutory procedure of obtaining sealed bids for the purchase. See 91 N.M. at 520, 577 P.2d at 419. Equity stepped in when the remedy at law -- the contract theory -- was not a viable option for recovery. Danley v. City of Alamogordo seems to be a different situation from Starko, Inc. v. Presbyterian Health Plan, Inc., because the contract could not be enforced in Danley v. City of Alamogordo, whereas there were potentially two other contract claims that could provide an adequate legal remedy in Starko, Inc. v. Presbyterian Health Plan, Inc.

The Court is similarly concerned about the Court of Appeals of New Mexico's reference in Starko, Inc. v. Presbyterian Health Plan, Inc. to Platco Corp. v. Shaw. In that case, the plaintiff could not enforce the contract he had with the defendants, because he performed the work in Arizona, he was not licensed as contractor in Arizona, and Arizona law denied recovery to unlicensed contractors. See 78 N.M. at 37, 428 P.2d at 11. The Supreme Court of New

Mexico affirmed the district court's decision to permit the plaintiff to amend his complaint at the end of trial and allege that he was in a master-servant relationship with the defendants.  See 78 N.M. at 37, 428 P.2d at 11.  The trial court determined that the plaintiff was entitled to recover from the defendants, and the Supreme Court of New Mexico did not find reversible error.  See 78 N.M. at 37, 428 P.2d at 11.  Although not directly discussing equitable principles or unjust enrichment, it seems that the Court of Appeals of New Mexico viewed Platco Corp v. Shaw as standing for the proposition that the existence of a contract does not foreclose equitable claims, but again, the contract was not enforceable in Platco Corp v. Shaw.  The cases that the Court of Appeals of New Mexico cited involve situations in which contracts existed, but something prevented the contracts from being enforced, whether it was a statute or another state's law. New Mexico law does not seem to automatically foreclose unjust enrichment claims when there are contracts between the parties or when a contract exists that governs the same subject matter as the unjust enrichment claim, but Starko, Inc. v. Presbyterian Health Plan, Inc. is the only New Mexico case the Court has seen where New Mexico courts allowed an unjust enrichment claim to proceed when a contract claim was still potentially viable.

The Court acknowledges that the Court of Appeals of New Mexico in Starko, Inc. v. Presbyterian Health Plan, Inc. dealt with the claims based on the pleadings, whereas many of the other cases involved more factual development.  Ontiveros Insulation Co. v. Sanchez came before the Court of Appeals of New Mexico on appeal after the trial court decided the issue on the merits when faced with cross-motions for summary judgment, see 2000-NMCA-051, ¶ 9, and Danley v. City of Alamogordo took place at the summary judgment stage, see 91 N.M. at 521, 577 P.2d at 419.  One explanation for the Court of Appeals of New Mexico's decision in Starko,

Inc. v. Presbyterian Health Plan, Inc. may be that, at the early stage of a case when it is not clear whether the legal theories will provide relief, a court should not dismiss the equitable claims. Another explanation, or perhaps part of the same explanation, may be that, although New Mexico courts have discussed the factual circumstances that preclude a contract claim, those discussions may simply be descriptive of the circumstances rather than prescriptive of an unjust enrichment claim. At least one court has interpreted New Mexico law as not requiring a plaintiff to prove that he or she lacks an adequate legal remedy. The Eastern District of Pennsylvania has stated:

> As a starting point, the Court concludes that the absence of an adequate remedy at law is *not* an element of the *prima facie* case for unjust enrichment under the laws of 9 of the jurisdictions at issue -- Florida, Massachusetts, Minnesota, Nevada, New Mexico, North Carolina, South Dakota, Utah, and Vermont.

In re Processed Egg Products Antitrust Litig., 851 F. Supp. 2d 867, 915 (E.D. Pa. 2012)(emphasis in original). The Eastern District of Pennsylvania explained how it reached that conclusion in a footnote, describing New Mexico law:

> The unavailability of an adequate remedy at law is not counted among the elements of an unjust enrichment claim under New Mexico law. "To prevail on a claim for unjust enrichment, 'one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust.'" City of Rio Rancho v. Amrep Southwest Inc., 260 P.3d 414, 428-429 (N.M. 2011)(citing Ontiveros Insulation Co. v. Sanchez, 129 N.M. 200, 3 P.3d 695 (N.M. Ct. App. 2000)).
>
> Furthermore, in New Mexico, "[t]here is no requirement that the creation of a statutory remedy at law for a particular type of claim will automatically supplant an equitable remedy that addresses the same claim. [Any] major departure from the long tradition of equity practice should not be lightly implied." Starko, Inc. v. Presbyterian Health Plan, Inc., ---N.M. ---, 276 P.3d 252 (N.M. Ct. App. 2011)(quoting Sims v. Sims, 122 N.M. 618, 930 P.2d 153 (1996)). "Likewise, . . . 'unjust enrichment constitutes an independent basis for recovery in a civil-law action, analytically and historically distinct from the other two

principal grounds for such liability, contract and tort.'"   Id. (quoting Hydro Conduit Corp. v. Kemble, 110 N.M. 173, 793 P.2d 855, 860 (1990)).

In re Processed Egg Products Antitrust Litig., 851 F. Supp. 2d at 917 n.50.

The Eastern District of Pennsylvania relied heavily on two opinions from the Court of Appeals of New Mexico in analyzing New Mexico law, and the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it.   See Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)("Ultimately, however, the Court's task is to predict what the state supreme court would do.")(citations omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1214 (D.N.M. 2008)(Browning, J.)("The Court's task is to divine, as much as possible, what the Supreme Court of New Mexico would do if the legal question was presented to it.").   While the Court certainly may and will consider the Court of Appeals of New Mexico's decision in making its determination, the Court is not bound by the Court of Appeals of New Mexico's decision the same way that it would be bound by a Supreme Court of New Mexico decision or by the Tenth Circuit's interpretation of New Mexico law absent an intervening Supreme Court of New Mexico case.   See Wade v. EMCASCO Ins. Co., 483 F.3d at 665-66 ("Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do.   In doing so, it may seek guidance from decisions rendered by lower courts in the relevant state.")(citations omitted)); Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that the Court is not bound by decisions from the Court of Appeals of New Mexico when determining what the Supreme Court of New Mexico would do).   For example, in Rimbert v. Eli Lilly & Co., the Court considered three cases from the Court of Appeals of New Mexico that adopted the learned-intermediary doctrine, ultimately holding that

the Supreme Court of New Mexico would not adopt the doctrine: "The Court believes that the Supreme Court of New Mexico would not, in 2008, adopt the doctrine of learned-intermediary and would decline to follow the Court of Appeals cases from the 1970s and 1980s." 577 F. Supp. 2d at 1214. Similarly here, the Court will carefully consider cases from the Court of Appeals of New Mexico, but will not follow them if it thinks the Supreme Court of New Mexico would not.

The Court is not convinced that <u>Starko, Inc. v. Presbyterian Health Plan, Inc.</u> reflects what the Supreme Court of New Mexico would do when faced with an unjust enrichment claim based on the same subject matter as an enforceable contract against a different party. The Court does not have to determine what the Supreme Court of New Mexico will do when it decides <u>Starko, Inc. v. Presbyterian Health Plan, Inc.</u>, but it does not think that if the Supreme Court of New Mexico were faced with this case, it would let the unjust enrichment claims survive the motion to dismiss. The Court has determined that the Supreme Court of New Mexico would not automatically foreclose an unjust enrichment claim against a third party, just because a contract with another party governs the same subject matter. Just as the Supreme Court of New Mexico would not automatically foreclose the claim, neither would the Supreme Court of New Mexico automatically permit the unjust enrichment claim to proceed. Rather, the Court thinks that the Supreme Court of New Mexico would require a plaintiff to allege that there is something preventing his recovery on the contract claim. This limitation is in line with the Tenth Circuit's constraints on the Court, because <u>Elliott Indus.</u> indicates that unjust enrichment under New Mexico law is available "where the plaintiff has no alternative right on an enforceable contract." <u>Elliott Indus.</u>, 407 F.3d at 1117 (quoting <u>Williston on Contracts</u>). Further, this limitation is

- 68 -

consistent with equitable principles, because equity will not work an additional injustice.  The Plaintiffs here have not demonstrated why they need WFC/WER in the case to avoid injustice.  It would, of course, be a different situation if the Plaintiffs had alleged that WPX Energy is insolvent or bankrupt, or that there is a statute barring the contract claim against WPX Energy.  The Plaintiffs have not made any allegations that they will not be able to recover against WPX Energy, but argue that their unjust enrichment claims should survive the motion to dismiss just in case WPX Energy has some defense on the contract claims that prevents recovery.  It does not seem right to the Court to make parties like WFC/WER remain in the case, incurring additional costs, just in case the Plaintiffs might not get what they think they deserve under their contract claims.  The injustice may not be as great here, because the same attorneys are representing WFC/WER, but the Court is concerned for a situation down the road where the party being sued for unjust enrichment is stuck in the case, unnecessarily incurring costs, with a very real likelihood that the plaintiffs will recover on the contract claim against a different party.  The Court thinks the better approach, one that reflects the Tenth Circuit's interpretation of New Mexico law and cases from the Supreme Court of New Mexico, is to require the plaintiff to make some showing as to why the contract claim is not viable.  Because the Plaintiffs have not made this showing, the Court will dismiss the unjust enrichment claims against WFC/WER.

III.    **THE UNJUST ENRICHMENT CLAIM FAILS UNDER COLORADO LAW.**

        The Court concludes that there is no actual conflict between New Mexico and Colorado unjust enrichment law, as applied in this case, because the Plaintiffs' unjust enrichment claims also fail under Colorado law.  See Fowler Brothers, Inc. v. Bounds, 2008-NMCA-091, ¶ 20 (finding no actual conflict between Arizona and New Mexico law, because "the law of both

states *as applied to the present case* would achieve the same outcome" and preclude recovery (emphasis in original).  The Court finds that the Tenth Circuit's interpretation of Colorado law in Cross Country Land Services, Inc. v. PB Telecommunications, Inc., 276 F. App'x 825 (10th Cir. 2008)(unpublished)(Holloway, J.), speaks clearly to the situation before the Court and leads the Court to dismiss the unjust enrichment claims.

In Cross Country Land Services, Inc. v. PB Telecommunications, Inc., Cross Country Land Services and PB Network Services initially entered a Memorandum of Understanding ("MOU"), which led to a formal contract, whereby Cross Country agreed to perform work on a fiber optic telecommunications project that Level 3 Communications, LLC, owned.   276 F. App'x at 827.  Cross Country asserted an unjust enrichment claim against Level 3 and a breach-of-contract claim against PB Network Services, seeking payment for its work on the telecommunications project.  See 276 F. App'x at 828.  On the contract dispute, Cross Country argued that it either should be able to rescind the formal contract, based on fraud and duress, and to receive restitution damages, or it should be able to pursue the breach-of-contract claim under the formal contract for unpaid invoices.  See 276 F. App'x at 831, 833-34.  The Defendants moved to compel Cross Country to elect a remedial theory, and Cross Country elected rescission. See 276 F. App'x at 829-39.  The district court then dismissed the breach of contract claim against PB Network Services, because it determined that any damages for unpaid invoices under the formal contract would be subsumed in the determination of restitution damages; it also dismissed the unjust enrichment claim against Level 3, because the MOU would dictate the amount of restitution damages.  See 276 F. App'x at 829 & 829 n.2.  After a bench trial, the district court ruled that Cross Country failed to show grounds for rescission.  See 276 F. App'x at

829.

The Tenth Circuit affirmed the district court's application of the election of remedies doctrine, because "the alleged injuries stem[med] from the same set of facts and the remedial theories proposed by Cross Country are inconsistent." 276 F. App'x at 831-32. The Tenth Circuit then reviewed the district court's decision to dismiss the breach-of-contract and unjust enrichment claims:

> The unjust enrichment claim and the breach of contract claim both appear inconsistent with the chosen remedy of rescission. However, a material difference is that the contract between PBNS and Cross Country, if upheld, is between different parties, while the unjust enrichment claim is asserted against a different although related party, Level 3. Cross Country argued that because of work performed on the Project, it conferred a benefit on Level 3 and in this context it would be inequitable for Level 3 not to pay for the services performed. Further, Cross Country argued that the remedy consists of damages in the amount of its unpaid invoices. Thus, the remedy on the unjust enrichment claim is the same as the remedy for the breach of contract claim -- damages in the amount of the allegedly unpaid invoices.

276 F. App'x at 833. Applying Colorado law, the Tenth Circuit determined that the district court properly dismissed the unjust enrichment claim:

> In summary, an express contract existed between Cross Country and PBNS dictating the terms of the work performed by Cross Country. The work performed by Cross Country under that contract benefited Level 3 as owner of the project. However, as the Colorado Supreme Court in <u>DCB Constr. Co. v. Central City Dev. Co.</u>[ 965 P.2d 115 (Colo. 1998)(en banc)] points out in adopting § 110 of the Restatement of Restitution, "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." 965 P.2d at 121 (quoting Restatement of Restitution § 110 (1937)). Thus, under this principle, Cross Country cannot recover against Level 3 merely because PBNS has failed to perform by making payments of invoices as required by the MOU.
>
> In other words, Cross Country's unjust enrichment claim against Level 3 is a repackaging of its breach of contract damages claim against PBNS. The unjust enrichment claim concerns the same work performed by Cross Country

under the contract with PBNS and is for substantially similar damages as those sought by Cross Country for the breach of contract claim.  Cross Country's breach of contract claim was properly dismissed by the district court because it is inconsistent with Cross Country's elected remedy of rescission.   Colorado precedent, including § 110 of the Restatement of Restitution, also requires dismissal of Cross Country's unjust enrichment claim due to its election of rescission as its remedial theory.

276 F. App'x at 834-35.

The Tenth Circuit's interpretation of Colorado unjust enrichment law in <u>Cross Country Land Services, Inc. v. PB Telecommunications, Inc.</u> -- while in an unpublished opinion -- is on all fours in this case and is worthy of following.  Following the general rule, "'a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract.'"  <u>Cross Country Land Servs., Inc. v. PB Telecommunications, Inc.</u>, 276 F. App'x at 834 (quoting <u>Interbank Investments, LLC v. Eagle River Water & Sanitation Distr.</u>, 77 P.3d at 816).  Although Colorado law recognizes two exceptions to the general rule -- "first, 'a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract' and second, 'a party can recover on a quasi-contract when the party will have no right under an enforceable contract,'" <u>Cross Country Land Servs., Inc. v. PB Telecommunications, Inc.</u>, 276 F. App'x at 834 (quoting <u>Interbank Investments, LLC v. Eagle River Water & Sanitation Distr.</u>, 77 P.3d at 816) -- neither exception applies in this case.  Here, the express contracts -- the royalty and overriding royalty agreements between the Plaintiffs and WPX Energy -- cover the same subject matter as the unjust enrichment claims, because the Plaintiffs seek the difference between the royalty and overriding royalty payments they received, and the amount to which they believe they are entitled under

their contracts.  That difference is the amount to which they allege that WFC/WER have been unjustly enriched.  Their breach-of-contract claim against WPX Energy and their unjust enrichment claims against WFC/WER seek the same relief, much like the claims in Cross Country Land Services., Inc. v. PB Telecommunications, Inc.  The Court has not identified any Supreme Court of Colorado cases since 2008, when the Tenth Circuit decided Cross Country Land Services, Inc. v. PB Telecommunications, Inc., which would change the outcome.  The Court concludes that, under Colorado law, the Plaintiffs cannot pursue their unjust enrichment claims against WFC/WER, because of the existence of the breach-of-contract claim against WPX Energy.

Following New Mexico's choice-of-law analysis, specifically the actual conflict doctrine, the Court concludes that there is no actual conflict between Colorado and New Mexico law, because the result is the same under both states' substantive law: the Plaintiffs' unjust enrichment claim fails.  Thus, the Court will apply New Mexico law as the forum law and dismiss the Plaintiffs' unjust enrichment claims against WFC/WER, because the Plaintiffs have not alleged that their contract claim against WPX Energy is not viable.

**IT IS ORDERED** that Williams Four Corners, LLC's and Williams Energy Resources LLC's Motion to Dismiss Plaintiffs' Third Claim for Relief, filed October 30, 2012, (Doc. 18), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jake Eugene Gallegos
Michael J. Condon
Gallegos Law Firm, P.C.
Santa Fe, New Mexico

> *Attorneys for the Plaintiffs*

Sarah Gillett
Dustin L. Perry
Hall Estill Hardwick, P.C.
Tulsa, Oklahoma

--and--

Christopher A. Chrisman
Holland & Hart LLP
Denver, Colorado

--and--

Mark F. Sheridan
Bradford C. Berge
Robert J. Sutphin
Elisa C. Dimas
John C. Anderson
Holland & Hart LLP
Santa Fe, New Mexico

> *Attorneys for the Defendants*