## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STEVEN J. ABRAHAM, and
H LIMITED PARTNERSHIP,
on behalf of themselves and others
similarly situated,

        Plaintiffs,

vs.                                   No. CIV 12-0917 JB/CG

WPX PRODUCTION PRODUCTIONS, LLC,
f/k/a WILLIAMS PRODUCTION COMPANY,
LLC, WILLIAMS FOUR CORNERS, LLC,
and WILLIAMS ENERGY RESOURCES, LLC,

        Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on: (i) WPX Production, LLC's Motion to

Dismiss or Stay Litigation, filed October 29, 2012 (Doc. 16)("Motion to Dismiss"); (ii) the

Plaintiffs' Motion to Modify Scheduling Order, filed October 2, 2013 (Doc. 77)("Plaintiffs'

---

[1]On September 27, 2013, the Court entered an Order denying WPX Production, LLC's Motion to Dismiss or Stay Litigation, filed October 29, 2012 (Doc. 16).  See Order, filed September 27, 2013 (Doc. 73)("Order").  Regarding the Plaintiffs' Motion to Modify Scheduling Order, filed October 2, 2013 (Doc. 77), and the Defendants' Opposed Motion to Modify Schedule and Request for Expedited Relief and Brief in Support, filed October 4, 2013 (Doc. 78), the Court entered two Orders granting the motions in part and denying them in part on September 12, 2014.  See Order, filed September 12, 2014 (Doc. 225); Order, filed September 12, 2014 (Doc. 226).  With respect to the Plaintiffs' Motion for Leave to File Fourth Amended Complaint and Supporting Authorities, filed October 31, 2013 (Doc. 96), the Court entered an Order granting the motion on September 18, 2014.  See Order, filed September 18, 2014 (Doc. 228).  Regarding the Defendants' Motion to Vacate Class Certification Hearing, filed February 13, 2014 (Doc. 134), the Court entered an Order denying the motion on September 18, 2014.  See Order, filed September 18, 2014 (Doc. 229).  In each of the Court's Orders, the Court stated that it would "at a later date issue an opinion more fully detailing its rationale for this decision." Orders at 1 n.1.  This Memorandum Opinion is the promised opinion for each of the Court's Orders.

Motion to Modify"); (iii) the Defendants' Opposed Motion to Modify Schedule and Request for Expedited Relief and Brief in Support, filed October 4, 2013 (Doc. 78)("Defendants' Motion to Modify"); (iv) the Plaintiffs' Motion for Leave to File Fourth Amended Complaint and Supporting Authorities, filed October 31, 2013 (Doc. 96)("Motion to File FAC"); and (v) the Defendants' Motion to Vacate Class Certification Hearing, filed February 13, 2014 (Doc. 134)("Motion to Vacate").  The Court held a hearing on May 1, 2013.  The primary issues are: (i) whether the Court should dismiss this case under the rule prohibiting claim-splitting because a similar litigation is pending before the Court in Anderson Living Trust v. WPX Production, LLC, No. CIV 12-0040 JB/KBM (D.N.M. filed December 5, 2011, removed January 12, 2012)("Anderson"); (ii) whether the Court should modify the scheduling order; (iii) whether the Plaintiffs have demonstrated good cause to amend their Complaint after the scheduling deadline to amend the pleadings has passed; and (iv) whether the Court should vacate the class certification hearing to prevent the Defendants from participating in two identical hearings.  As to the first issue, the rule against claim-splitting requires that the parties be the same in both this case and Anderson.  Because Anderson and this case involve different parties, the Court will not dismiss this case.  Second, pursuant to the parties' agreement, the Court will extend the pretrial deadlines and therefore grant the Plaintiffs' Motion to Modify the scheduling order and grant in part the Defendants' Motion to Modify.  Third, because the Plaintiffs demonstrate good cause to amend their pleadings after the scheduling deadline, the Court will grant the Plaintiffs' Motion to File FAC.  Fourth, because this case and Anderson contain various differences that the Plaintiffs are entitled to draw out at the class certification hearing, the Court denies the Motion to Vacate.

## FACTUAL BACKGROUND

This matter arises from alleged royalty underpayments related to oil and gas leases in the San Juan Basin in New Mexico and Colorado.  See Third Amended Class Action Complaint, ¶¶ 13-14, at 5, filed October 29, 2012 (Doc. 15)("TAC").

> The San Juan Basin, one of the largest natural gas producing fields located in northwest New Mexico and southwest Colorado, was originally developed in the early 1950's by El Paso Natural Gas Company . . . .  The natural gas produced in the San Juan Basin is conventional gas which contains methane (natural gas) and entrained natural gas liquids ("NGLs"), such as ethane and butane.  In order to make the gas safe to enter the interstate pipeline, the NGLs must be removed from the gas stream.

Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1099 (10th Cir. 2005)("Elliott Indus.").  The named Plaintiffs are Steven J. Abraham, a New Mexico resident who "owns mineral interests in Colorado and New Mexico," TAC ¶ 1, at 1, and H Limited Partnership, a New Mexico limited partnership that owns mineral interests in New Mexico, see TAC ¶ 2, at 1-2.  The Plaintiffs filed this class action on behalf of a proposed class membership to include

> [a]ll present and former owners of royalty and overriding royalty which burden oil and gas leases and wells in the San Juan Basin of Colorado . . . [and] New Mexico, which leases and wells are now or were formerly held by WPX Production LLC, Williams Production Company, LLC, or their corporate affiliates, successors or predecessors in title, which leases are producing or have been productive of conventional natural gas recovered from sandstone or shale formations, and which gas is or has been transported and delivered for extraction and marketing of natural gas liquids from the gas at the Ignacio Processing Plant in La Plata County, Colorado, the Kutz Plant in San Juan County, and the Lybrook Plant in Rio Arriba County, New Mexico.

TAC ¶ 22, at 7-8.

The Defendants include WPX Energy Production, LLC ("WPX Production"), as well as Williams Four Corners, LLC, and Williams Energy Resources, LLC ("Williams Resources"), (all of these collectively referred to as the "Williams Companies").  See TAC ¶¶ 3-5, at 2-3. WPX Production is an "'upstream' exploration and production company that owns, develops and

operates oil and gas leases and gas wells in the Rocky Mountain west, including the San Juan

Basin of Colorado and New Mexico and markets some of its gas production." TAC ¶ 3, at 2.

Williams Four Corners is a "'midstream' enterprise that owns and operates a 3,500 mile natural

gas gathering system, and processing and fractionation facilities within the San Juan Basin of

Colorado and New Mexico. Williams Four Corners provides its services for gas produced by

WPX Production from its working interest in leases." TAC ¶ 4, at 2. Williams Energy

Resources "performs the functions of acquiring, selling and marketing the natural gas liquids, oil

and other hydrocarbons produced by WPX Production on its own behalf and on behalf of

Williams Four Corners midstream business." TAC ¶ 5, at 3.

> The Plaintiffs allege that the Defendants' "combined conduct" resulted in

> WPX's systemic underpayment of Royalty due to the failure to pay on the
> burdened leaseholds' production on NGLs and on oil and condensate,
> understating the liquids content of production, the improper charging of post-
> production expenses against production revenues, and deductions in the royalty
> computation of charges that are not actually incurred and are unreasonable.
> NGLs produced as part of the gas stream are subsequently extracted at plants
> owned and operated by Williams and retained and disposed of by Williams free of
> royalty at a substantial financial detriment to the plaintiffs and the proposed class
> by reason of the challenged conduct in which Williams participates with WPX.
> Although WPX has the contractual Royalty payment obligation, Williams are
> jointly responsible with WPX for the underpayment of plaintiffs' and the class'
> royalties.

TAC ¶ 14, at 5.

## PROCEDURAL BACKGROUND

The Plaintiffs' claims against WPX Production include: (i) breach of contract (Count I),

see TAC ¶¶ 58-61, at 17-18; (ii) breach of the covenant of good faith and fair dealing (Count II),

see TAC ¶¶ 62-65, at 18-19; (iii) breach of the implied covenant to market under New Mexico

and Colorado law (Counts IV and V), see TAC ¶¶ 70-79, at 20-22; and (iv) violation of the New

Mexico Oil and Gas Proceeds Payment Act, N.M. Stat. Ann. §§ 70-10-1 to 70-10-6 (Count VII), see TAC ¶¶ 86-88, at 23.  The claims against Williams Four Corners and Williams Resources are for unjust enrichment (Count III).  See TAC ¶¶ 66-69, at 19.  Against the Williams Companies, the Plaintiffs request a declaratory judgment, accounting for the underpayments, and an injunction for the future royalty calculations and payments (Count VI).  See TAC ¶¶ 80-85, at 22-23.

This case is similar to Anderson, which also arises from disputes over alleged unpaid royalty payments.  The Plaintiffs in Anderson initiated the lawsuit on December 5, 2011, almost one year before the Plaintiffs here filed the lawsuit.  See Notice of Removal ¶ 1, at 1, filed January 12, 2012 (Doc. 1).  Like the Plaintiffs in this case, the Plaintiffs in Anderson "own a non-cost bearing interest in the revenues derived from the production and sale of hydrocarbons pursuant to the terms of oil and gas leases owned or partially owned by Williams."  Anderson, No. CIV 12-0040, Third Amended Complaint for Underpayment of Oil and Gas Royalties ¶ 14, at 4, filed February 8, 2013 (Doc. 88)("Anderson TAC").  The proposed class in Anderson includes every potential member of the proposed class in Abraham.  Specifically, it includes

> all other owners of 'non-cost bearing' interests in the subject wells, i.e. those who are similarly situated as owning royalty or overriding royalty in said wells, located in the States of New Mexico and Colorado, which involve the production of either conventional natural gas or CBM gas (in Colorado), as well as other hydrocarbons, in which Williams owns all or a portion of the leasehold or working interest in the oil and gas lease(s) covering said owners' interests, and produces and sells hydrocarbons under the terms of said leases . . . .

Anderson TAC ¶ 17, at 5.  In Anderson, as in this case, WPX Production is a named defendant. See Anderson TAC ¶ 9, at 2-3; TAC ¶ 3, at 2.  The Plaintiffs in Anderson did not bring claims against Williams Four Corners or Williams Resources, but named as an additional defendant

WPX Production Rocky Mountain, LLC, f/k/a Williams Production RMT Company, LLC.  See Anderson TAC ¶ 10, at 3.

Although the claims in the two cases are similar, they are not identical.  This case involves disputes over conventional gas production, see TAC ¶ 13, at 5, while Anderson includes conventional gas production and coalbed methane production, see Anderson TAC ¶ 13, at 3. Like this case, the Plaintiffs in Anderson assert breach of contract, see Anderson TAC ¶¶ 66-70, at 19-20; breach of the covenant of good faith and fair dealing, see Anderson TAC ¶¶ 41, 42, 44, at 13-14, ¶ 67, at 19; breach of the duty to market, see Anderson TAC ¶¶ 47-59, at 15-17; and violations of the New Mexico Oil and Gas Proceeds Payment Act, N.M.S.A. 1978, §§ 70-10-1 to 70-10-6, see Anderson ¶¶ 60-65, at 18-19. The Anderson Plaintiffs allege, as a separate cause of action, fraud and misstatement of the value of gas and affiliate sales, see Anderson TAC ¶¶ 35-46, at 12-15, while the Plaintiffs in this case list fraudulent concealment as a reason to toll the statute of limitations, see TAC ¶¶ 55-57, at 16-17.

The parties in this case have filed numerous motions.  This opinion addresses five of them: (i) WPX Production's Motion to Dismiss; (ii) the Plaintiffs' Motion to Modify; (iii) the Defendants' Request for Relief; (iv) the Plaintiffs' Motion to File FAC; and (v) the Defendants' Motion to Vacate.

### 1.    **WPX Production's Motion to Dismiss.**

WPX Production filed its Motion to Dismiss the Plaintiffs' TAC under rule 12(b)(6) for failure to state a claim upon which relief can be granted.  See Motion to Dismiss at 1.  WPX Production contends that this case and Anderson share so many similarities that "this action constitutes inappropriate claim-splitting," because the claims asserted in this action "are claims that have been brought, or could be brought in Anderson."  Motion to Dismiss at 1.  WPX

Production contends that the "rule against claim-splitting requires a plaintiff to assert all his claims from a common set of facts in one lawsuit." Motion to Dismiss at 4. It asserts that New Mexico's rule against claim-splitting adopts the Restatement (Second) of Judgments § 24's rule. Motion to Dismiss at 5. Accordingly, it seeks that the Court dismiss the case or abstain from hearing the matter until it resolves Anderson. See Motion to Dismiss at 1.

As to the similarities, WPX Production first argues that the "putative class in *Anderson Trust* includes every potential member of the putative class in *Abraham*." Motion to Dismiss at 2. Both sets of plaintiffs sue on behalf of all royalty owners burdening WPX Production-operated wells, which produce conventional natural gas, in New Mexico and Colorado. See Motion to Dismiss at 2-3. Second, it argues that the Defendants are largely the same: WPX Production is a Defendant in both cases. See Motion to Dismiss at 3. Third, it contends that the claims are substantially the same: although this case is limited to conventional gas produced from the San Juan Basin, while Anderson includes coalbed methane as well as conventional gas, "the *Anderson Trust* putative class includes *Abraham's* alleged class." Motion to Dismiss at 3. Finally, it asserts that "a final decision in *Anderson Trust* would preclude this case." Motion to Dismiss at 8. It argues that, because a court may "dismiss a duplicative suit if a final judgment in the first suit would preclude the second suit under *res judicata*," and a decision in Anderson will resolve this case, the Court should dismiss this case. Motion to Dismiss at 8.

Additionally, WPX Production asserts that the prior pending action doctrine and the first-filed rule apply when two federal actions involving the same or similar parties are pending in the same court at the same time. See Motion to Dismiss at 9. It contends that this doctrine likewise requires that the Court dismiss this case. See Motion to Dismiss at 9-10. Finally, WPX

Production argues that, if the Court does not dismiss the case, it should abstain or stay the case pending Anderson's resolution.  See Motion to Dismiss at 10-11.

The Plaintiffs responded on November 6, 2012.  See Plaintiffs' Response in Opposition to WPX Production Production's Motion to Dismiss or Stay, filed November 6, 2012 (Doc. 19)("Response").  They argue that WPX Production's Motion to Dismiss does not show how their Complaint fails to state a claim upon which relief can be granted.  See Response at 2.  They contend that the Motion to Dismiss "relies on two discretionary court docket management doctrines, neither of which fits the facts of this case."  Response at 2.  First, they state that the claim-splitting doctrine applies where the same plaintiff brings the same claims against the same defendants in different actions.  See Response at 2.  Here, they contend, the parties are different. See Response at 2-3.  Second, they argue that the first-to-file doctrine applies where two lawsuits are pending between the same parties in two different federal district courts.  See Response at 3. Again, they state, the first-to-file doctrine is inapplicable here, because different parties are involved in each case and the same Court has jurisdiction over both cases.  See Response at 3. Consequently, the Plaintiffs assert that the Court must deny the Motion to Dismiss.  See Response at 4.

WPX Production replied on November 30, 2012.  See WPX Production, LLC's Reply in Support of its Motion to Dismiss, filed November 30, 2012 (Doc. 26)("Reply").  At the outset, it states that courts use rule 12(b)(6) "to dismiss duplicative lawsuits."  Reply at 2 n.1.  It then argues that this case violates the rule against claim-splitting, because "a judgment in Anderson Trust would have a preclusive effect on Abraham."  Reply at 2.  As support for that statement, it contends that Anderson would preclude this case "if a class is certified," because the Anderson class would subsume the Abraham class.  Reply at 2.  WPX Production concedes that the named

Plaintiffs in this case "are not the same people as the named plaintiffs in <u>Anderson Trust</u>," but nevertheless maintains that the "putative classes are the same." Reply at 2. WPX Production argues that, because the two classes are largely the same, the Court must dismiss this action. <u>See</u> Reply at 3.

The Court held a hearing on the MTD on May 1, 2013. <u>See</u> Transcript of Hearing (taken May 1, 2013)("May 1 Tr."). The parties first discussed the Motion to Dismiss. WPX Production stated that the Court should dismiss or stay the litigation, because this case contains the same plaintiffs and the same defendant -- WPX Production -- "on essentially the same claim," which "constitutes impermissible claims splitting." May 1 Tr. at 20:14-19 (Berge). Regarding the parties, WPX Production stated that the parties are the same, because the two proposed classes are the same, even though the Court had not certified a class in either case. <u>See</u> May 1 Tr. at 20:14-17 (Berge).

The Plaintiffs responded that the Plaintiffs here could not be the same as the "class" in <u>Anderson</u>, because the Court had not certified a class. May 1 Tr. at 24:5-7 (Gallegos)("And, quite clearly, the element of same parties, both as to plaintiff and defendants, is not present."); <u>id.</u> at 25:17-20 (Gallegos). The Plaintiffs pointed to a case in which the Supreme Court of New Mexico held that claim preclusion did not prevent the plaintiffs' proposed class action, because "a class was never certified in the [earlier] litigation," so the plaintiffs could not have been members of a previous class action. May 1 Tr. at 25:24-26:1 (Gallegos). They stated: "[T]o try and make a sameness argument out of possible overlap and probable overlap in putative class membership is completely rejected." May 1 Tr. at 27:4-7 (Gallegos).

WPX Production conceded that its "motion really doesn't apply" unless the Court certifies both class actions. Tr. at 31:4-7 (Berge). It admitted that its "motion would be better

addressed . . . after certification."  May 1 Tr. at 31:10-11 (Berge).  The Court agreed with WPX

Production.  The Court stated that it may need to deny the Motion to Dismiss without prejudice

to renewing if the Court ends up certifying both classes.  See May 1 Tr. at 31:12-18 (Court).

Next, the Plaintiffs argued that the first-filed rule does not apply here.  They stated that it

applies when two competing lawsuits are pending in different courts before different judges

having concurrent jurisdiction.  See May 1 Tr. at 27:16-21 (Gallegos).  Moreover, they asserted

that the first-filed rule is entirely discretionary.  See May 1 Tr. at 28:1 (Gallegos).  They argued

that the rule's purpose is judicial economy, which does not necessarily apply when the same

judge presides over both cases.  See May 1 Tr. at 28:1-24 (Gallegos).

WPX Production argued that the first-filed rule is not limited to situations in which cases

are pending in different districts before different judges.  See May 1 Tr. at 32:15-19 (Berge).

Instead, it contended, courts apply the first-filed doctrine most frequently when cases are

pending in different districts, because plaintiffs more often choose to sue in different districts.

See May 1 Tr. at 32:15-19 (Berge).  Nevertheless, WPX Production stated, the Court could

"revisit" this argument "down the road" if it certifies both class actions and WPX Production

renews its motion.  May 1 Tr. at 33:2-3 (Berge).  After hearing all of the parties' arguments, the

Court denied the Motion to Dismiss, because "at least at this point, these cases are not class

actions, so the parties are different."  May 1 Tr. at 33:11-14 (Court).

**2.      The Plaintiffs' Motion to Modify and the Defendants' Motion to Modify.**

The Plaintiffs filed their Motion to Modify on October 2, 2013.  See Plaintiffs' Motion to

Modify at 1.  They move to modify the scheduling order to: (i) "memorialize the parties'

agreement to extend the deadlines for class certification expert reports"; and (ii) "allow for

plaintiffs to supplement their class certification expert reports on or before December 23, 2013

after they have received defendants' expert reports and after class certification discovery." Plaintiffs' Motion to Modify at 1.  The Defendants did not file a response brief opposing the Plaintiffs' Motion to Modify.  Instead, they filed their own Motion to Modify in hopes of extending all other discovery deadlines, in addition to the deadlines that the Plaintiffs sought to extend.  See Defendants' Motion to Modify at 1-2.

The Defendants filed their Motion to Modify on October 4, 2013, only two days after the Plaintiffs filed their Motion to Modify.  See Defendants' Motion to Modify at 1.  They argue that "the pretrial schedule in this case is unworkable."  Defendants' Motion to Modify at 3.  Because the Defendants' attorneys also represent the defendants in Anderson, in which they are similarly producing discovery, they allege that the pretrial schedule is "**impossible**."  Defendants' Motion to Modify at 3 (bold in original).  They assert that they "must respond to the demands of not one, but two different groups of Plaintiffs' counsel, who have two different approaches to prosecution of the cases, who will retain two different groups of expert witnesses."  Defendants' Motion to Modify at 3.  They argue that, despite their diligence, see Defendants' Motion to Modify at 14, the "current schedule is prejudicing Defendants, and absent relief, will severely impact Defendants' ability to prepare their defenses to class certification," Defendants' Motion to Modify at 3.  The Defendants contend that this prejudice constitutes "good cause" to modify the schedule under rule 16 of the Federal Rules of Civil Procedure.  Defendants' Motion to Modify at 8.  They request that the Court "hold another scheduling conference to consider the dates in this case and in Anderson Trust based on the information provided herein."  Defendants' Motion to Modify at 19.

The Plaintiffs responded on October 17, 2013.  See Plaintiffs' Response to Defendants' Opposed Motion to Modify Schedule, filed October 17, 2013 (Doc. 91)("Response to

Defendants' Motion to Modify").  The Plaintiffs "are willing to agree to a 60 day extension of all class certification deadlines, so long as the deadlines for merits discovery, pretrial deadlines, and the current trial date remain in place."  Response to Defendants' Motion to Modify at 1.  They do not agree to an extension of all deadlines from four to six months.  See Response to Defendants' Motion to Modify at 1.  The Plaintiffs state that they are willing to move the class certification hearing to March 2014.  See Response to Defendants' Motion to Modify at 4.

The Court held a hearing on October 21, 2013.  See Transcript of Hearing (taken January 29, 2014)(Doc. 127)("Oct. 21 Tr.").  The Court acknowledged that "the parties here are agreeable to some modification of the class certification deadlines, from four to six, to about a 60-day extension of all the class certification deadlines."  Oct. 21 Tr. at 7:24-8:3 (Court).  The Plaintiffs noted that the Defendants agreed to the Plaintiffs' Motion request to extend the deadline by which the Plaintiffs had to file their expert reports.  See Oct. 21 Tr. at 9:18-20 (Gallegos).  The only issue, therefore, was whether the Court should extend the remaining deadlines.

The Defendants explained that "the complexity of discovery has clearly become magnified, both in volume and difficulty since then."  Oct. 21 Tr. at 11:24-12:2 (Gillett).  They stated that they must produce far more documents in discovery than the Plaintiffs.  See Oct. 21 Tr. at 12:2-4 (Gillett)(noting that the Plaintiffs "are seeking to go back many, many years").  Furthermore, the Defendants described how they must produce discovery not only on this case, but also for the Anderson case.  See Oct. 21 Tr. at 12:8-11 (Gillett)(stating that the Plaintiffs in each case "have served different written discovery requests, have requested different production formats for documents, have different deposition strategies and deposition requests").  In light of this complexity, the Defendant proposed compiling two teams of ten lawyers each to review

documents for a period of eight weeks.  See Oct. 21 Tr. at 18:2-6 (Gillett).  They argued that this time frame would allow them to give the Plaintiffs the documents they had requested.  See Oct. 21 Tr. at 18:23-25 (Gillett).

The Defendants then argued that there would be no prejudice to the proposed class because "[b]oth sets of plaintiffs have claims that garner 18 percent interest, if successful."  Oct. 21 Tr. at 20:9-11 (Gillett).  "In the face of those claims, it's absolutely in the best interests of our clients to proceed as expeditiously as possible."  Oct. 21 Tr. at 20:11-14 (Gillett).  They argued, however, that they could not proceed as fast as the current schedule proposed, because it would require them to spend all their time responding to discovery without also working with experts and developing their defenses.  See Oct. 21 Tr. at 20:15-18 (Gillett).

The Court asked the Plaintiffs what discovery requests they made that were tying up the Defendants.  See Oct. 21 Tr. at 25:21-24 (Court).  The Plaintiffs responded that most of the requests relate to the damages calculations, including oil-and-gas pricing.  See Oct. 21 Tr. at 26:1-3 (Gallegos).  The Court observed that those requests relate to "merit types of issues."  Oct. 21 Tr. at 26:4-5 (Court).  The Plaintiffs argued that this discovery "was necessary to show that we could calculate damages on a classwide basis."  Oct. 21 Tr. at 26:11-14 (Gallegos). Nonetheless, the Plaintiffs acknowledged that the Defendants' discovery burden was especially significant at this time.  See Oct. 21 Tr. at 26:16-21 (Gallegos).  The Plaintiffs agreed to extend discovery deadlines forward and not to ask for discovery that relates solely to the merits.  See Oct. 21 Tr. at 26:22-23 (Gallegos); id. at 27:9-25 (Court, Gallegos)(agreeing to relieve some of the pressure on the Defendants to produce documents that are not necessary at the class certification stage).

In light of the Defendants' burden, the Plaintiffs agreed to allow the Defendants more time.  See Oct. 21 Tr. at 45:23-46:1 (Court, Gallegos); id. at 46:5-9 (Court, Gallegos).  Upon the parties' agreement, the Court adopted a new schedule:

The parties have stipulated and agreed . . . to the following pre-hearing schedule:

| | |
|---|---|
| January 6, 2014 | Plaintiffs' Motion for Class Certification |
| January 13, 2014 | Parties exchange and file Preliminary witness lists |
| January 20, 2014 | Defendants' Expert Reports |
| February 7, 2014 | Plaintiffs' Supplemental Expert Reports |
| February 10, 2014 | Defendants' Response to Motion for Class Certification |
| February 21, 2014 | Discovery completed |
| February 28, 2014 | Exchange Exhibits Lists and Final Witness Lists |
| March 13-14, 2014 | Hearing |

Agreed Order for Schedule Leading to Class Certification Hearing, filed February 21, 2014 (Doc. 144).

### 3.     The Motion to File FAC.

On October 31, 2013, the Plaintiffs filed the Motion to File FAC, requesting leave pursuant to rule 15(a)(2) of the Federal Rules of Civil Procedure.  See Motion to File FAC at 1. They assert that "discovery has provided new information to plaintiffs that supports this Motion."  Motion to File FAC at 2.  Specifically, they state that they now possess "documents that memorialize the so-called Keep Whole[2] arrangements under which the producing company is allocated less valuable processed gas while the processing company acquires the more

---

[2]"A 'keep whole' contract is one that requires the processor to compensate the royalty owner for any loss in thermal potential (energy) that natural gas undergoes from processing -- namely, the Btu factor of gas decreases when NGLs are removed."  Anderson Living Trust v. WPX Energy Prod., LLC, 306 F.R.D. 312, 327 (D.N.M. 2014)(Browning, J.).

valuable natural gas liquids (NGLs)."   Motion to File FAC at 2-3 (footnote added).   The Plaintiffs contend that this new information justifies their request to amend after the scheduling order's August 30, 2013 deadline for amending pleadings.  See Motion to File FAC at 2-3.

The Plaintiffs argue that the previous amended complaints were "each entered with consent of defendants."  Motion to File FAC at 3.  They have "not previously sought leave of the Court to file an amended Complaint that revises and supplements the factual allegations or adds to the legal claims for relief."  Motion to File FAC at 3.  They describe the significant revisions that the FAC contains.  See Motion to File FAC at 4.  These changes include: (i) a new class definition that "better describe[s] Royalty owners"; (ii) a more specific description of the 1991 and 2011 processing agreements between the participating entities; (iii) a new claim for relief alleging that WPX Production, Williams Resources, and Williams Four Corners have engaged in a civil conspiracy; (iv) removal of allegations that WPX Production deducted a marketing fee in computation of the royalties; (v) removal of repetitious allegations; and (vi) an acknowledgment that the Court has dismissed their claim for unjust enrichment.  Motion to File FAC at 4.  The Plaintiffs state that "the gravamen of the case against WPX for nonpayment of Royalty on liquid hydrocarbons is not changed by the proposed Fourth Amended Complaint."  Motion to File FAC at 4.

The Defendants responded on November 15, 2013.  See Defendants' Response to Motion for Leave to File Fourth Amended Class Action Complaint, filed November 15, 2013 (Doc. 103)("Response to Motion to File FAC").  They argue that the Plaintiffs' Motion to File FAC is "untimely, as it comes more than two months after the Court's deadline for amendments to the complaint."  Response to Motion to File FAC at 3.  The Defendants acknowledge that the Plaintiffs' purported reason for this late amendment is that discovery led to new information.

See Response to Motion to File FAC at 3.  Nonetheless, they argue that this reason is insufficient to allow the Plaintiffs to wait so long to file their Motion to File FAC.  See Response to Motion to File FAC at 4.

The Defendants also argue that "the proposed amendment raises new legal issues, such that Defendants will be substantially prejudiced if they are required to defend against this complaint on the current schedule."  Response to Motion to File FAC at 5.  Mainly, the Defendants object to the FAC's addition of a civil conspiracy claim, because the Defendants assert that it requires them to analyze conspiracy law under four jurisdictions and then to perform a choice-of-law analysis.  See Response to Motion to File FAC at 5-6.  They assert that the "likelihood of prejudice" is a justifiable basis for denying leave to amend.  Response to Motion to File FAC at 5.  Despite their assertions of prejudice, the Defendants "recognize[e] the liberal standards governing motions to amend a complaint."  Response to Motion to File FAC at 8.

The Plaintiffs replied on November 26, 2013.  See Plaintiffs' Reply in Support of Their Motion for Leave to File Fourth Amended Class Action Complaint, filed November 26, 2013 (Doc. 106)("Reply to Motion to File FAC").  They argue that their FAC will not prejudice the Defendants, because it does not materially change the case.  Reply to Motion to File FAC at 1-2.  "The Amended Complaint adds no new factual issues.  On the existing facts and issues already framed it adds a theory for recovery based on civil conspiracy between the defendants."  Reply to Motion to File FAC at 1-2.  The Plaintiffs also state that the FAC will not delay the Court's analysis whether to certify a class, because the different states' conspiracy laws do not conflict. See Reply to Motion to File FAC at 5-7.  Moreover, they contend that their brief delay is justifiable, because they discovered their ability to allege a claim for conspiracy as a result of recently obtained discovery.  See Reply to Motion to File FAC at 7-9.  They argue that the

August 30, 2013 deadline for motions to amend the pleadings was "improvidently adopted," and that they should have set the deadline further in the future so they could move to amend based on discovery.  Reply to Motion to File FAC at 7-8.

The Court held a hearing on February 21, 2014.  See Transcript of Hearing (taken February 21, 2014)(Doc. 253 in Anderson)("Feb. 21 Tr.").  The Court confirmed that the Defendants' main objection to the FAC was the conspiracy claim.  See Feb. 21 Tr. at 88:3-6 (Court).  The Court stated that this claim does not "fundamentally change[] the nature of this case. . . .  It seems to me it's just, you know, all these companies have been acting together; now they're saying it's a conspiracy."  Feb. 21 Tr. at 88:14-21 (Court).

The Defendants stated that "this issue does inject complexities into the case that are going to require the Court to address them before the class certification issues are addressed."  Feb. 21 Tr. at 91:8-11 (Anderson).  Moreover, they argued that the Court should deny the Motion to File FAC because it would have to eventually dismiss the claim.  See Feb. 21 Tr. at 92:18-23 (Anderson).  Moreover, they asserted that the Court should deny the Motion to File FAC because, if the Defendants file a motion to dismiss, "it is going to almost necessarily impact the class certification schedule, in order to allow for the submission of a motion to dismiss, briefing on that, and a ruling on that before the rule 23 matters come to a head."  Feb. 21 Tr. at 94:20-95:1 (Anderson).

The Plaintiffs responded that their conspiracy claim would not require the Court to postpone the schedule, because conspiracy law contains the same elements under New Mexico, Colorado, Utah, and Oklahoma law.  See Feb. 21 Tr. at 97:4-7 (Gallegos).  Next, they asserted that their Motion to File FAC is not so untimely that the Court should deny leave to amend.  See Feb. 21 Tr. at 97:8-14 (Gallegos).  They stated that they filed it only two months -- rather than

years -- after the deadline.  See Feb. 21 Tr. at 97:15-20 (Gallegos).  Furthermore, they argued

that they had good reason for filing after the August 30, 2013 deadline: "We had some discovery

September 27 from the defendants, and October 8.  And that fleshed out [the cause of action.]"

Feb. 21 Tr. at 97:22-983 (Gallegos).  Finally, the Plaintiffs contended that the FAC adds only

one theory of recovery and therefore does not prejudice the Defendants.  See Feb. 21 Tr. at 98:4-

7 (Gallegos).  Consequently, the Plaintiffs stated that the Court must allow their amendment

under rule 15(a), which allows amendments freely when justice requires.  See Feb. 21 Tr. at

98:22-25 (Gallegos).

The Court stated that "the Tenth Circuit has pretty much made the rule 15(a) and the rule

16 standards fairly close in their application.  It's still a pretty liberal standard."  Feb. 21 Tr. at

107:15-19 (Court).  It observed that, in light of the "tight" deadline for discovery and filing

motions to amend, it did not "think there was a delay of so much that it should play a major

factor here."  Feb. 21 Tr. at 108:8-13 (Court).  The Court noted that "everything can still proceed

because it really doesn't change the nature of the discovery or how things are going to be

presented.  It's just an additional issue that will have to be dealt with."  Feb. 21 Tr. at 108:20-25

(Court).  Accordingly, the Court granted the Motion to File FAC.  See Feb. 21 Tr. at 109:1-2

(Court).

### 4.    **The Motion to Vacate.**

On February 13, 2014, about one month before the Court was scheduled to hold a hearing

regarding class certification, the Defendants moved to postpone the class certification hearing

until the Court decides whether to certify a class in Anderson.  See Motion to Vacate at 1.  They

argue that, "[w]hether a class can be certified in this case at all, therefore, can only be determined

after the Court has decided the certification hearing in *Anderson*."  Memorandum in Support of

Motion to Vacate Class Certification Hearing at 1, filed February 13, 2014 (Doc. 135)("Memo. to Vacate").   The Defendants contend that holding their class certification hearing before the Court decides whether to certify a class in <u>Anderson</u> subjects them to "repetitious litigation against multiple parties with similar claims, as well as the prospect of inconsistent judgments." Memo. to Vacate at 2.

The Defendants argue that the grounds for the motion are "squarely rooted in judicial economy, conservation of resources, and fairness."  Memo. to Vacate at 4.  They assert that, if "the Court certifies the class that has been proposed in *Anderson*, it will include the putative class in this case and the certification motion pending in this case would be moot."  Memo. to Vacate at 4-5.  Additionally, the Defendants state that "the requested relief will not prejudice the plaintiffs," because deferring the class certification hearing will enable both parties to know whether their proposed class could be granted "before expending the energy and resources at a hearing."  Memo. to Vacate at 5.

The Plaintiffs responded on February 19, 2014.  <u>See</u> Plaintiffs' Response in Opposition to Defendants' Motion to Vacate Class Certification Hearing, filed February 19, 2014 (Doc. 141)("Response to Motion to Vacate").   They explain that "the parties have expedited and proceeded with extensive class certification discovery" based on the Court's scheduled date for the class certification hearing.  Response to Motion to Vacate at 2.  They then describe the efforts they have made to conduct and review discovery.  <u>See</u> Response to Motion to Vacate at 2-3.  They argue that to "allow the cancellation of the hearing in this case as sought by defendants will render a useless waste most of the discovery and expenditure by both sides."  Response to Motion to Vacate at 3.

The Plaintiffs argue that the Court should deny the Defendants' Motion to Vacate for several reasons.  First, they contend it is untimely.  See Response to Motion to Vacate at 4. "Defendants have known about the March 2014 hearing date since October, 2013, but have waited until the eleventh hour to file their motion, and then only after plaintiffs have devoted extensive attorney and paralegal time and incurred very significant expense to prepare." Response to Motion to Vacate at 4.  Second, they assert that the "motion contradicts positions defendants have previously taken in this litigation."  Response to Motion to Vacate at 4.  They argue that the Defendants previously wanted to consolidate this case with Anderson, but now they want to wait until the Court decides whether to certify a class in Anderson before proceeding with this case.  See Response to Motion to Vacate at 5.  Third, the Plaintiffs contend that they "would be unfairly prejudiced if the motion were granted," because they should be "entitled to proceed" with their case as they have argued it.  Response to Motion to Vacate at 5.

The Court held a hearing on February 21, 2014.  See Feb. 21 Tr. at 109:16-17 (Court). The Defendants described how they were unable to secure any efficiencies in discovery because they could not consolidate this case with Anderson.  See Feb. 21 Tr. at 8:1-7 (Sutphin).  They asked the Court to vacate their class certification hearing until after the Court decides whether to certify a class in Anderson, because "only one efficiency remains to be had here, and that's efficiency at the class certification hearing."  Feb. 21 Tr. at 8:5-7 (Sutphin).  They asserted that holding two similar class certification hearings "seems to go against the very purpose of rule 23," which they contend is to "promote the efficient resolution of claims in cases involving multiple parties with similar claims to eliminate repetitious litigation and to avoid inconsistent judgment." Feb. 21 Tr. at 109:23-110:5 (Sutphin).  They contended that, because the cases are so similar, holding two hearings subjects them to "repetitious litigation, defending against multiple parties

- 20 -

with the same claims, as well as the prospect of inconsistent judgment." Feb. 21 Tr. at 110:6-12 (Sutphin).

Regarding the prejudice to the Plaintiffs, the Defendants argued that vacating the hearing would not prejudice the Plaintiffs, because "[t]hey went into this being a second-filed case, knowing that the first-filed case would be heard first with eyes wide open, and still pursued their procedural path." Feb. 21 Tr. at 115:14-17 (Sutphin). They admitted, however, that the Plaintiffs would suffer prejudice from the "slight delay . . . occasioned by giving the Court time to resolve Anderson Trust before it turns to Abraham." Feb. 21 Tr. at 115:18-21 (Sutphin). Nevertheless, the Defendants maintained that the "prejudice does not outweigh the efficiencies and the other reasons for granting our motion." Feb. 21 Tr. at 115:18-23 (Sutphin).

The Plaintiffs began by describing the differences between the two cases and explaining why the Court needed to hold two hearings.

> Anderson is a deductions case. Abraham is not. Abraham says, You're not paying on all production; every royalty agreement requires you pay on all production, clearly certifiable. But Anderson is a . . . deductions case. What can you deduct, and how are you deducting it? The problem with that is that does take you to the different language of the various royalty agreements.

Feb. 21 Tr. at 118:3-12 (Gallegos). In short, the Plaintiffs asserted that the Defendants have spotted the opportunities to defeat certification in Anderson, and are trying to circumvent certification here by alleging that the two cases are identical, so if the Court denies certification in Anderson, it must also deny it here. See Feb. 21 Tr. at 119:2-10 (Gallegos). The Plaintiffs argued that "the Court should hear everything," which would give the Court the chance to examine how the case should proceed. Feb. 21 Tr. at 119:18-120:1 (Gallegos).

The Court questioned whether the two class certification hearings would be exact duplicates of each other. See Feb. 21 Tr. at 8:16-18 (Court). While the Defendants argued that

their presentations would be "very similar," they conceded that "the plaintiffs' presentations in each case will be different." Feb. 21 Tr. at 8:19-22 (Sutphin). The Defendants also admitted that their own presentations would differ between the two cases, because "there is not a complete identity of claims." Feb. 21 Tr. at 9:24-25 (Sutphin).

The Court stated that, because there are "some differences that I would have to hear at some point, I might as well hear them that week." Feb. 21 Tr. at 123:25-124:1 (Court). The Court predicted that "there are differences that are subtle and nuanced. And I will have to understand those and appreciate those." Feb. 21 Tr. at 124:4-7 (Court). Accordingly the Court decided not to vacate the class certification hearing. Feb. 21 Tr. at 124:9 (Court).

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

"The District Court has wide discretion in its regulation of pretrial matters." Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990). Scheduling orders, however, "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Accord Street v. Curry Bd. of Cty. Comm'rs, No. CIV 06-0776 JB/KBM, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.). The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are related. "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'" Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(Rushfelt, J.)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)). "Properly

construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent

efforts."  Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6.  See Advanced Optics

Electronics, Inc. v. Robins, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.)(noting that

the "rule 16(b) good-cause inquiry focuses on the diligence of the party seeking [to] amend the

scheduling order.").   In In re Kirkland, the Tenth Circuit dealt with the definition of "good

cause" in the context of a predecessor to modern rule 4(m) of the Federal Rules of Civil

Procedure,[3] and noted:

> [W]ithout attempting a rigid or all-encompassing definition of 'good cause,' it
> would appear to require at least as much as would be required to show excusable
> neglect, as to which simple inadvertence or mistake of counsel or ignorance of the
> rules usually does not suffice, and some showing of 'good faith on the part of the
> party seeking the enlargement and some reasonable basis for noncompliance
> within the time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.

1987))(internal quotation marks omitted).   The Tenth Circuit explained that Putnam v. Morris

"thus recognized that the two standards, although interrelated, are not identical and that 'good

cause' requires a greater showing than 'excusable neglect.'"   In re Kirkland, 86 F.3d at 175.

---

[3] Rule 4(m) provides that

If a defendant is not served within 120 days after the complaint is filed, the court -
- on motion or on its own after notice to the plaintiff -- must dismiss the action
without prejudice against that defendant or order that service be made within a
specified time.  But if the plaintiff shows good cause for the failure, the court
must extend the time for service for an appropriate period.  This subdivision (m)
does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).  The Tenth Circuit in In re Kirkland interpreted rule 4(j), which was
substantially identical.  See 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding
if service has not been made upon the defendant within 120 days after filing and the party
responsible for service cannot show good cause why it was not made.").

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request.  In Advanced Optics Electronics, Inc. v. Robins, the Court found that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not, therefore, show good cause to modify the scheduling order.  769 F.Supp.2d at 1313 n.8.  In Street v. Curry Bd. Of Cnty. Comm'rs, however, the Court found that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery."  2008 WL 2397671, at *11.  In Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5353493 (D.N.M. Oct. 7, 2012)(Browning, J.), the Court did not find good cause to modify the scheduling order and reopen discovery, and refused to grant the plaintiffs' request do so, where the plaintiffs' excuse for not disclosing their expert before the close of discovery was that they thought that the case would settle and they would thus not require expert testimony.  See 2012 WL 5353493, at *14.  The Court noted:

> The [plaintiffs] filed this case on April 15, 2010.  Because [Plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

2012 WL 5353493, at *14.

In Scull v. Management & Training Corp., 2012 WL 1596962 (D.N.M. May 2, 2012)(Browning, J.), the Court denied a plaintiff's request for an extension of time to name an expert witness against a defendant.  The plaintiff asserted that he had waited to name an expert

witness until a second defendant joined the case, but a scheduling order was in effect before the second defendant entered the case.  The Court found that the plaintiff should have known that he would need to name an expert witness against the defendant already in the case.  See 2012 WL 1596962, at *8.  The Court determined that the plaintiff was seeking "relief from his own disregard" for the deadline.  2012 WL 1596962, at *8.  "Despite his knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against [Defendant] MTC."  2012 WL 1596962, at *8.  Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC."  2012 WL 1596962, at *9.  The Court also noted that not naming an expert witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case.  2012 WL 1596962, at *9.

In Stark-Romero v. National Railroad Passenger Co (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court found that a lawyer had shown excusable neglect when he missed a scheduling deadline because soon after his son's wedding, his father-in-law developed a tumor in his chest and the lawyer arranged his father-in-law's medical care, and only after the lawyer returned to his work did he realize that a deadline passed.  See 275 F.R.D. 549-550.  The Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but found that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not because of his

inadvertence.  275 F.R.D. 549-550.  In <u>West v. New Mexico Taxation and Revenue Department</u>, No. CIV 09-0631 JB/CEG, 2010 WL 3834341 (D.N.M. July 29, 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment, in part because of the difficulty the plaintiff's counsel experienced attempting to obtain depositions with certain defense witnesses, and thus it was not her fault, and in part because cross-motions on summary judgment are particularly helpful for the Court:

> [C]ross-motions tend to narrow the factual issues that would proceed to trial and promote reasonable settlements.  In some cases, it allows the Court to determine that there are no genuine issues for trial and thereby avoid the expenses associated with trial.  The Court prefers to reach the merits of motions for summary judgment when possible.

2010 WL 3834341, at **4-5.  On the other hand, in <u>Liles v. Washington Tru Solutions, LLC</u>, No. CIV 06-854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the only rationale the plaintiff provided was that its counsel's "family and medical emergencies" precluded the plaintiff from timely responding.  2007 WL 2298440, at *2.

## LAW REGARDING AMENDING THE PLEADINGS BEFORE TRIAL

Rule 15(a) provides that a party may amend his or her pleading as a matter of right within twenty-one days of serving it and within twenty-one days of the service of a response pleading. <u>See</u> Fed. R. Civ. P. 15(a).  Otherwise, the party must obtain the opposing parties' consent or the court's leave -- which should be "freely give[n] . . . when justice so requires" -- to amend his or her pleading.  Rule 15(a) provides:

**(a)  Amendments Before Trial.**

    **(1)  Amending as a Matter of Course.**  A party may amend its pleading once as a matter of course within:

        **(A)**   21 days serving it, or

      **(B)**    if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

    **(2)**    **Other Amendments.**  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

    **(3)**    **Time to Respond.**  Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

Fed. R. Civ. P. 15(a).  Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); Youell v. Russell, No. 04-1396, 2007 WL 709041, at *1-2 (D.N.M. Feb. 14, 2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Co-op., No. 05-0073, 2005 WL 3664299, at *1-2 (D.N.M. Sept. 23, 2005)(Browning, J.).  The Supreme Court of the United States has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Furthermore, the United States Court of Appeals for the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim.  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001).  See also In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a), however, where the proposed "amendment would be futile." Jefferson Cty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999). See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80. An amendment is "futile" if the pleading, "as amended, would be subject to dismissal." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)). A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)). The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice, 893 F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66. "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Sch., No. 05-1165, 2007 WL 1306814, at *2 (D.N.M. March 12, 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)).

If a party seeks to amend his or her pleading after the time for seeking leave for pleading amendments has passed under a scheduling order, then, in addition to meeting rule 15(a)(2)'s requirements, he or she must satisfy rule 16(b)(4)'s good-cause requirement. See Gorsuch, Ltd.,

B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1240 (10th Cir. 2014)(Matheson, J.)

("After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good

cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule

15(a) standard.").  Rule 16(b)(4) states: "A schedule may be modified only for good cause and

with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "In practice, this standard requires the

movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent

efforts.'"  Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d at 1240.  The rule

"focuses on the diligence of the party seeking leave to modify the scheduling order to permit the

proposed amendment."  Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d 1285, 1313

(D.N.M. 2010)(Browning, J.)("Properly construed, 'good cause' means that scheduling deadlines

cannot be met despite a party's diligent efforts.").  See Gerald v. Locksley, 849 F. Supp. 2d

1190, 1209-11 (D.N.M. 2011)(Browning, J.)(same).

The Court has previously stated that its rule 16(b) good-cause inquiry focuses on the

diligence of the party seeking to amend the scheduling order.  See Walker v. THI of N.M. at

Hobbs Ctr., 262 F.R.D. 599, 602-03 (D.N.M. 2009)(Browning, J.); Guidance Endodontics, LLC

v. Dentsply Int'l, Inc., No. 08-1101, 2009 WL 3672505, at *2-3 (D.N.M. Sept. 29, 2009)

(Browning, J.); Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., Nos. 02-1146 and 03-

1185, 2007 WL 2296955, at *3 (D.N.M. June 5, 2007)(Browning, J.).  The United States District

Court for the District of South Carolina has stated:

> Rule 16(b)'s "good cause" standard is much different than the more lenient
> standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of
> the movant, or the prejudice to the opposing party.  Rather, it focuses on the
> diligence of the party seeking leave to modify the scheduling order to permit the
> proposed amendment.  Properly construed, "good cause" means that scheduling
> deadlines cannot be met despite a party's diligent efforts.  In other words, this
> court may "modify the schedule on a showing of good cause if [the deadline]
> cannot be met despite the diligence of the party seeking the extension."

> Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997)(citations omitted), aff'd, 129 F.3d 116 (4th Cir. 1997).  See Denmon v. Runyon, 151 F.R.D. 404, 407 (D. Kan. 1993)(O'Connor, J.)(affirming an order denying the plaintiff's motion to amend after the deadline which the scheduling order established had passed and stating that, "[t]o establish 'good cause,' the party seeking to extend the deadline must establish that the scheduling order's deadline could not have been met with diligence").  Cf. SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1518-19 (10th Cir. 1990)(affirming, under rule 16(b), denial of a motion to amend an answer to include a compulsory counterclaim filed three months after the scheduling order deadline).

In In re Kirkland, 86 F.3d 172 (10th Cir. 1996), the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j).[4]  The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

---

[4]The version of rule 4(j) that the Tenth Circuit discussed in In re Kirkland was the version in effect after the 1983 amendments to rule 4(j).  That version of rule 4(j) provided:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.  This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

Act of Feb. 26, 1983, Pub. L. No. 97-462, 96 Stat. 2527.

86 F.3d at 175 (emphasis omitted)(internal quotation marks omitted)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)).  The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  In re Kirkland, 86 F.3d at 175.

Other courts within the Tenth Circuit have held that "the 'good cause' standard primarily considers the diligence of the party . . . seeking an extension[, who] must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan.1996)(alterations in original)(internal quotation marks omitted).  The Honorable Dale A. Kimball, United States District Judge for the District of Utah, found "good cause" existed to amend his scheduling order when he decided to permit the plaintiff's counsel to withdraw as counsel.  Kee v. Fifth Third Bank, No. CIV 06-0602 DAK/PMW, 2008 WL 183384, at *1 (D. Utah Jan. 17, 2008).  Judge Kimball reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order."  Kee v. Fifth Third Bank, 2008 WL 183384, at *1.

## ANALYSIS

First, WPX Production does not show that the rule against claim-splitting applies, because the parties are different.  Likewise, it does not show that the first-filed rule or the prior-pending action doctrines require the Court to dismiss or stay this case.  The Court will therefore deny the Motion to Dismiss and allow the case to proceed.  Second, pursuant to the parties' agreement, the Court will extend the pretrial deadlines and grant the Plaintiffs' Motion to Modify the scheduling order and grant in part the Defendants' Motion to Modify.  Third, because the

Plaintiffs demonstrate good cause to amend their pleadings after the scheduling deadline, the Court will grant the Plaintiffs' Motion to File FAC. Fourth, because this case and Anderson contain various differences that the Plaintiffs are entitled to draw out at the class certification hearing, the Court denies the Motion to Vacate.

## I.     THE COURT WILL DENY THE MOTION TO DISMISS.

First, WPX Production contends that the Court should dismiss this case under the rule against claim-splitting, because the Plaintiffs could assert these same claims in Anderson. The parties in Anderson and this case are different, however, so the rule against claim-splitting does not preclude this case. Similarly, neither the first-filed rule nor the prior-pending action doctrine bars this suit.

### A.     THE RULE PROHIBITING CLAIM SPLITTING DOES NOT APPLY, BECAUSE THE CASES INVOLVE DIFFERENT PARTIES.

The United States Court of Appeals for the Tenth Circuit has stated that most courts "analyze claim-splitting as an aspect of res judicata." Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp., 296 F.3d 982, 986 (10th Cir. 2002)(Ebel, J.). Under the res judicata framework, federal courts "appl[y] federal law to determine the effect of a previous federal judgment." Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp., 296 F.3d at 986. Federal law dictates that federal courts apply "the law that would be applied by state courts in the State in which the federal diversity court sits." Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp., 296 F.3d at 986 (quoting Matosantos Commercial Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1208 (10th Cir. 2001)). The Court must therefore apply New Mexico's rules on claim preclusion.

In New Mexico, res judicata, also known as claim preclusion, requires that: (i) the parties must be the same or in privity; (ii) the subject matter must be identical; (iii) the capacity or

character of persons for or against whom the claim is made must be the same; and (iv) the same cause of action must be involved in both suits.  See Deflon v. Sawyers, 2006-NMSC-025, ¶ 3, 137 P.3d 577, 580 (citing Myers v. Olson, 1984-NMSC-015, ¶ 9, 676 P.2d 822, 824).  WPX Production does not demonstrate that the Plaintiffs here and the plaintiffs in Anderson are the same parties or represent the same interests.  Instead, it argues that the proposed classes in Anderson and this case represent the same interests.  See Motion to Dismiss at 6.  Specifically, WPX Production asserts: "The *Abraham* putative class and the *Anderson Trust* putative class both include all royalty owners whose royalties burden WPX-operated wells in the San Juan Basin that produce conventional gas."  Motion to Dismiss at 6.  See Motion to Dismiss at 3 ("[T]he *Anderson Trust* putative class includes *Abraham's* alleged class.").  The Court has not, however, certified a class in either case.

Before the hearing, WPX Production argued that the Court may dismiss a proposed class action for claim splitting, even when the named plaintiffs differ, because the named Plaintiffs here could be included in the Anderson class.  See Reply at 3.  It cited Greene v. H&R Block Eastern Enterprises, Inc., 727 F. Supp. 2d 1363 (S.D. Fla. 2010)(King, J.), as dismissing a duplicative lawsuit, even though the second suit had different named plaintiffs than the first.  See 727 F. Supp. 2d at 1366-67.  Greene v. H&R Block Eastern Enterprises, Inc. involved two proposed class actions that different named plaintiffs filed against the same defendant.  See 727 F. Supp. 2d at 1365-66.  In Greene v. H&R Block Eastern Enterprises, Inc., however, the Southern District of Florida had already conditionally certified a class action for the first case before the plaintiffs filed the second case.  See 727 F. Supp. 2d at 1365.  The first case, thus, included "at least seven" of the second case's named plaintiffs, because they had opted into the conditional class in the first case.  727 F. Supp. 2d at 1367.

That situation is not present here.  The Court has not certified a class in Anderson, so neither the named Plaintiffs nor this case's proposed class members can be included in the non-existent class in Anderson.  There is no class for them to join.  The proper question, therefore, is not whether the proposed classes represent the same interests, but whether the current Plaintiffs represent the same interests as the Anderson plaintiffs.  At the hearing, WPX Production conceded that the Court had not certified a class in either case, so the parties in the two cases, at this point, were distinct.  May 1 Tr. at 31:4-11 (Berge)(admitting that WPX Production's Motion to Dismiss does not apply until after the Court has certified both classes).

Moreover, the Plaintiffs in this case are neither the same nor in privity with the plaintiffs in Anderson.  Analyzing Colorado law, the Tenth Circuit in Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp., found that the parties were not identical or in privity under Colorado law, even though: (i) the claims in both cases arose from a single wrong that the same defendant committed; and (ii) the plaintiffs in each case had identical boards of directors and officers.  See 296 F.3d at 988. Because the parties were not identical, the Tenth Circuit determined that "the district court abused its discretion in dismissing this action based on the prohibition against claim-splitting."  Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp., 296 F.3d at 988.

New Mexico's law concerning privity of parties is similar to Colorado's.  "The concept of privity with respect to issue preclusion has been defined as 'that relationship between two parties which is sufficiently close so as to bind them both to an initial determination, at which only one of them was present.'"  Rex Inc. v. Manufactured Housing Comm. of the State of N.M., Manufactured Housing Div., 1995-NMSC-023, ¶ 18, 892 P.2d 947, 954; Deflon v. Sawyers, 2006-NMSC-025, ¶ 4, 137 P.3d 577, 580 ("Privity requires at a minimum, . . . showing that the parties in the two actions are really and substantially in interest the same." (quoting St. Louis

Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1174 (10th Cir. 1979)).  Like the Tenth Circuit in Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp., the Supreme Court of New Mexico has determined that privity exists with respect to property rights when two parties share the same interest in "the same property right."  Deflon v. Sawyers, 2006-NMSC-025, ¶ 4, 137 P.3d 577, 580.  The Supreme Court of New Mexico stated: "Privity has been held to exist in the following relationships: concurrent relationship to the same property right (i.e. trustee and beneficiary); successive relationship to the same property or right (i.e. seller or buyer); or representation of the interests of the same person."  Deflon v. Sawyers, 2006-NMSC-025, ¶ 4, 137 P.3d 577, 580.

The Plaintiffs in this case are not the same parties as the plaintiffs in Anderson.  The Plaintiffs here are Abraham and H Limited Partnership, see TAC ¶¶ 1-2, at 1-2, while the plaintiffs in Anderson are the Anderson Living Trust, the Prichett Living Trust, the Lee Wiley Moncrief 1988 Trust, the Kelly Cox Testamentary Trust 7/1238401, the Minnie Patton Scholarship Foundation, SWMF Properties, Inc., Cynthia W. Sadler, and Robert Westfall, see Anderson TAC, ¶¶ 1-8, at 2.  Nor do the parties meet New Mexico's definition of being in privity with each other.  The Plaintiffs in each case own different property interests.  As stated in Deflon v. Sawyers, the Supreme Court of New Mexico has determined that plaintiffs with interests in different properties do not meet New Mexico's definition of being in privity.  See Deflon v. Sawyers, 2006-NMSC-025, ¶ 4, 137 P.3d 577, 580.  Furthermore, the parties here are more distinct than the parties in Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.  See 296 F.3d at 988.  WPX Production conceded this fact.  See Tr. at 31:4-7 (Berge)(admitting that its "motion really doesn't apply" unless the Court certifies both class actions).

In the same way, the Defendants in this case are not the same as the defendants in Anderson.  The Supreme Court of New Mexico requires both the plaintiffs and the defendants to

be the same.  See Deflon v. Sawyers, 2006-NMSC-025, ¶ 3,137 P.3d 577, 580.  In Deflon v. Sawyers, the Supreme Court of New Mexico held that a lawsuit against a corporation did not bar a separate suit against the corporation's officers on the same claims, because "the capacity or character of persons for or against whom the claim is made must be the same."  The Defendants here include the Williams Companies.  See TAC ¶¶ 3-5, at 2-3.  In Anderson, the defendants include WPX Production, but they also include Williams Production Company, LLC, and WPX Production Rocky Mountain, LLC.  See Anderson TAC ¶¶ 9-10, at 2-3.  Williams Four Corners and Williams Resources, thus, are not defendants in Anderson.  Neither the Plaintiffs nor the Defendants are the same in both cases.  Because WPX Production does not satisfy the elements of claim-splitting, the Court will not dismiss this case.

### B.   NEITHER THE FIRST-FILED RULE NOR THE PRIOR-PENDING-ACTION DOCTRINE BAR THIS SUIT.

"[T]he 'first to file] rule . . . pertains when two district courts have jurisdiction over the same controversy, affording deference to the first filed lawsuit."  United States ex rel. Brown Minneapolis Tank Co. v. Kinley Const. Co., 816 F. Supp. 2d 1139, 1149-50 (D.N.M. 2011)(Browning J.)(quoting Lipari v. U.S. Bancorp NA, 345 F. App'x 315, 317 (10th Cir. 2009)).  The overriding purpose of the first-to-file rule is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result" when two federal district courts share concurrent jurisdiction over a single case.  Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga., 189 F.3d 477, at *2 (10th Cir. 1999)(table decision)(quoting Sutter Corp. v. P&P Indus., Inc., 125 F.3d 914, 917 (5th Cir. 1997)).  "To aid in achieving this goal, the 'first-to-file' rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court."  Buzas Baseball, Inc. v. Bd.

of Regents of Univ. Sys. of Ga., 189 F.3d at *2 (emphasis added)(citing Alltrade, Inc. v. Uniweld

Prods., Inc., 946 F.2d 622, 625 (9th Cir. 1991)).

The Court presides over both Anderson and this case.  In contrast, the first-to-file rule

applies when two cases are before two different federal district courts.  See Buzas Baseball, Inc.

v. Bd. of Regents of Univ. Sys. of Ga., 189 F.3d 477, at *2.  WPX Production concedes that "the

first-filed rule is typically used in the case of competing district courts."  Reply at 7.  Similarly,

the first-to-file rule's purpose does not require the Court to dismiss this case.  The purpose is to

prevent duplication of time and efforts, and "avoid rulings which may trench upon the authority

of sister courts."  Sutter Corp. v. P&P Indus., Inc., 125 F.3d at 917.  As the Court presides over

both cases, it will gain expertise and familiarity over both cases without requiring another district

judge to gain that same level of knowledge.  Likewise, the Court's rulings will not "trench upon

the authority of sister courts" or arrive at inconsistent results.  Sutter Corp. v. P&P Indus., Inc.,

125 F.3d at 917.

Furthermore, the first-to-file rule permits a court to decline jurisdiction when two cases

involve "the same issues against the same parties."  Buzas Baseball, Inc. v. Bd. of Regents of

Univ. Sys. of Ga., 189 F.3d at *2.  As the Court explained above, this case and Anderson do not

involve the same parties.  Finally, the first-to-file rule "is a self-imposed restraint upon an

authority actually possessed.  The abstention doctrine is not an automatic rule; it rather involves

a discretionary exercise of the court's equity powers where there exist special circumstances pre-

requisite to its application on a case-by-case basis."  O'Hare Intern. Bank v. Lambert, 459 F.2d

328, 331 (10th Cir. 1972).  Accordingly, the Court will not dismiss this case on the basis of the

first-to-file rule.

WPX Production next argues that the Court could use the prior-pending-action doctrine

to dismiss the case.  See Motion to Dismiss at 9.   Under the prior-pending-action doctrine, federal courts may dismiss or stay a case "when two pending *federal* court actions involve the same or similar claims and parties."   In re Telluride Global Development, LLC, 380 B.R. 585, 592-93 (Bankr. 10th Cir. 2007)(emphasis in original).   To further "federal court efficiency," federal courts may give priority to the earlier filed case, "absent a showing of greater convenience or special circumstances that favor the second action, in order to avoid duplicative litigation."   In re Telluride Global Development, LLC, 380 B.R. at 592-93.   The Tenth Circuit has cited to case law which states that "this doctrine is applicable where there are two related actions contemporaneously proceeding in two federal courts, for the reason that '[a]s between federal courts . . . the general principal is to avoid duplicative litigation.'"   Bradley v. Kelly, 479 F. Supp. 2d 281, 284 (D. Conn. 2007)(quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).   See In re Telluride Global Development, LLC, 380 B.R. at 593 nn.14-15 (citing Bradley v. Kelly, 479 F. Supp. 2d at 284).

WPX Production points to cases from outside the Tenth Circuit as standing for the proposition that some courts have dismissed a duplicative lawsuit pending in the same district under the prior pending action doctrine.  See Motion to Dismiss at 9.  These cases do not suggest that the Court should dismiss the case here.  In Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir. 1977)(Garth, J.), the same plaintiff maintained two cases involving the exact same defendant and the same subject matter.  See 563 F.2d at 70 ("Mrs. Walton's second complaint was indistinguishable from her first.").  Likewise, in Holliday v. City of Newington, 2004 WL 717160 (D. Conn. March 19, 2004)(Underhill, J.), "the second-filed case involve[d] the same claims as the claims in the first-filed case as well as the same defendants."  2004 WL 717160, at *2 (describing the two actions as "virtually identical").  Here, the two cases not only involve

different parties, but involve different properties.  Because the cases involve different property interests and different parties, they are not so similar that the two cases would cause duplicative efforts.  For the same reasons that the Court does not dismiss the case, it similarly will not abstain or stay the case.

## II.     THE COURT WILL EXTEND PRETRIAL DEADLINES IN ACCORDANCE WITH THE PARTIES' AGREEMENT.

As agreed upon at the hearing, the Court will grant the Plaintiffs' Motion to Modify, which the Defendants never disputed.  It will also grant the Defendants' Motion to Modify in part and deny it in part, because of the burden the Defendants face in responding to the Plaintiffs' requests in both this case and in Anderson.  Instead of extending pretrial deadlines for four to six months, as the Defendants initially requested, the Court will extend the deadlines pursuant to the parties' later agreement.  See Agreed Order for Schedule at 1-2.  The Court therefore adopts the schedule in the Agreed Order for Schedule:  "[T]he parties have stipulated and agreed . . . to the following pre-hearing schedule:"

| | |
|---|---|
| January 6, 2014 | Plaintiffs' Motion for Class Certification |
| January 13, 2014 | Parties exchange and file Preliminary witness lists |
| January 20, 2014 | Defendants' Expert Reports |
| February 7, 2014 | Plaintiffs' Supplemental Expert Reports |
| February 10, 2014 | Defendants' Response to Motion for Class Certification |
| February 21, 2014 | Discovery completed. |
| February 28, 2014 | Exchange Exhibits Lists and Final Witness Lists |
| March 13-14, 2014 | Hearing |

Agreed Order for Schedule at 1-2.

III.     **THE COURT GRANTS THE MOTION TO FILE FAC**.

Because the Plaintiffs seek to amend their Complaint after the scheduling order's August 30, 2013 deadline, they must first satisfy rule 16(b)(4)'s good-cause requirement, in addition to rule 15's requirements.  See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d at 1240.  Under rule 15(a), the Plaintiffs may amend their pleading with the court's leave "when justice so requires."  Fed. R. Civ. P. 15(a).  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, no reasons exist to deny the Plaintiffs' request to amend under rule 15(a), and the Plaintiffs demonstrate good cause under rule 16(b).  Although the Plaintiffs ask to amend after the deadline to amend the pleadings, the Court does not conclude that this short delay constitutes "undue delay, bad faith or dilatory motive" to preclude their amendment under rule 15.  Foman v. Davis, 371 U.S. at 182.  Rather, the Plaintiffs have a good explanation for their delay, which satisfies rule 16(b)(4)'s requirement that they demonstrate good cause to modify the pleadings after the scheduling deadline.  See Fed. R. Civ. P. 16(b)(4).  The Tenth Circuit has stated that plaintiffs can show their diligence, and therefore meet the good cause standard, with "an adequate explanation for any delay."  Minter v. Prime Equip. Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)(explaining that lateness itself does not justify denial of a motion to amend, but "undue" lateness does).  "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery . . . ."  Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d at 1240.  See Jenkins v. Duffy Crane and Hauling, Inc., 2015 WL

6464437, at *6 (D. Colo. Oct. 27, 2015)(citing <u>Pumpco, Inc. v. Schenker Inter., Inc.</u>, 204 F.R.D. 667, 668-69 (D. Colo. 2001)(Boland, J.)(stating that when "a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order, [that] constitutes good cause for such amendment pursuant to Rule 16(b)[(4)]")).

The Plaintiffs had only about seven weeks between the Court's adoption of the scheduling plan and the deadline to amend the pleadings, even though discovery had only just begun. <u>See</u> Reply to Motion to File FAC at 7-8. The Plaintiffs may not have obtained or reviewed all of the documents that might reveal their conspiracy claim's existence before the deadline to amend passed. <u>See</u> Reply to Motion to File FAC at 7-8. The Court acknowledged at the hearing that the schedule was "tight." Feb. 21 Tr. at 108:8-13 (Court). The Plaintiffs assert that this early deadline caused their delay: they received discovery revealing their potential conspiracy claim after the deadline had passed. <u>See</u> Reply to Motion to File FAC at 7-8. This reason demonstrates that the Plaintiffs' Motion to File the FAC does not arise in bad faith or constitute a dilatory tactic. Instead, they diligently sought to amend the moment that discovery revealed their potential new claim. As rule 16(b)(4) "focuses on the diligence of the party seeking leave to modify the scheduling order," <u>Advanced Optics Elecs., Inc. v. Robins</u>, 769 F. Supp. 2d at 1313, the Court concludes that the Plaintiffs had good cause for their delay. <u>Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n</u>, 771 F.3d at 1240 (stating that a party can meet rule 16's good cause standard by showing that they learned new information through discovery).

Furthermore, their delay is minimal. The filing occurred only two months after the scheduling deadline and nowhere near the time of the scheduled trial. The Court concludes that the Defendants will not suffer prejudice from this delay. <u>Compare</u> <u>Minter v. Prime Equip. Co.</u>,

451 F.3d 1196 (10th Cir. 2006)(concluding that leave to amend was not proper when the plaintiff sought to add a products liability claim to its case, which had been pending for four years, weeks before trial).   Despite the short delay, the Defendants argue that they will suffer prejudice, because "the proposed amendment raises new legal issues."  Response to Motion to File FAC at 5.   The gist of their argument is that the conspiracy claim may arise under various state laws, which could inject "complicated choice of law issues" into the case.  Response to Motion to File FAC at 5.  They contend that the choice-of-law issues will overly complicate the Court's rule 23 analysis.  See Response to Motion to File FAC at 7.  The Defendants do not, however, show that civil conspiracy law varies between the relevant states.   In fact, the Plaintiffs recite the four states' conspiracy law to demonstrate that the law does not conflict.  See Reply to Motion to File FAC at 5-6.  The Court does not foresee that any choice-of-law analysis will make its rule 23 analysis too complicated to perform.  It merely adds one more step to the Court's analysis.  This additional step does not "present insuperable obstacles."  Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986).  Moreover, choice of law issues may doom class certification, but it does not make the claim futile; these Plaintiffs can still bring these claims, and the Court will determine the applicable law.  Additionally, the Defendants will have sufficient time to respond to the FAC, because the Court has adopted the parties' proposed scheduling order, which extends the class certification deadlines.  See Agreed Order for Schedule at 1-2.

Finally, the Defendants assert that the Court must deny the Motion to File FAC, because the Court will simply have to dismiss the claim once the Defendants file a motion to dismiss, making the amendment futile.  See Response to Motion to File FAC at 3 n.1.  The Defendants do not develop the argument and show why these companies could not conspire -- either under the law or under the facts of the case.  Maybe there will be some reason, but the Defendants have not

cited a case that precludes it, nor have they pointed to any facts that make the claim unavailable as a matter of law.  The Court thus does not consider the Plaintiffs' new claim futile as a matter of fact or law.  The claim is not so implausible that it fails on its face.  If the Defendants want to file a motion to dismiss the claim, they may do so.  The Court will not, however, deny the Motion to File FAC without giving the Plaintiffs the opportunity to argue why their conspiracy claim should proceed, especially when the Defendants do not provide sufficient reasons for why the claim should not go forward.  The Court will address any arguments regarding the claim's survival in a motion to dismiss, which gives both parties the opportunity to address the claim's merits.  See Feb. 21 Tr. at 109:3-15 (Court)("I don't think we can kind of just put our foot into it or toe into it and I deny the motion on that basis.  I think that's unfair to the plaintiff.").

The Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim.  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001).  See also In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  "The purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  Minter v. Prime Equip. Co., 451 F.3d at 1204.  The Plaintiffs should have the opportunity to proceed and have their conspiracy claim decided on its merits.

## IV.    THE COURT DENIES THE MOTION TO VACATE.

The Defendants argue that the Court should vacate the class certification hearing on the basis of "judicial economy, conservation of resources, and fairness."  Memo. to Vacate at 4. They assert that, if "the Court certifies the class that has been proposed in *Anderson*, it will include the putative class in this case and the certification motion pending in this case would be moot."  Memo. to Vacate at 4-5.  Concerns of judicial economy, conservation of resources, and

fairness, however, do not suggest that the Court should vacate the class certification hearing. Holding separate hearings for each case will enable the Court to draw out the subtle distinctions between the two cases and to determine whether one case might be able to proceed on a different basis than the other case.  See Feb. 21 Tr. at 124:4-7 (Court).  Moreover, the Defendants admit that the cases contain differences.  See Feb. 21 Tr. at 8:19-22 (Sutphin); id. at 9:24-25 (Sutphin). Although there may be considerable overlap in the evidence that the Defendants present at the two hearings, because the different Plaintiffs have different claims, requiring the Defendants to participate in both hearings will not subject them to "repetitious litigation" or require them to defend "against multiple parties with the same claims," as the Defendants contend.  Feb. 21 Tr. at 110:6-12 (Sutphin).

These differences, according to the Plaintiffs, could carry great weight in the Court's determination whether to certify a class.  See Response to Motion to Vacate at 5 (arguing that the Plaintiffs should be "entitled to proceed" with their case as they have argued it).  The Plaintiffs argue that the Court can certify their case, even though it may not be able to certify a class in Anderson.  See Feb. 21 Tr. at 118:3-12 (Gallegos).  They assert that the Court must analyze individual lease language in Anderson, while it need not do so here, which allows the Court to certify the case.  See Feb. 21 Tr. at 118:3-12 (Gallegos).  Accordingly, they contend that a denial of certification in Anderson would not produce the efficiency gains that the Defendants allege, because a denial in Anderson would not automatically require the Court to deny a class in Abraham.  See Feb. 21 Tr. at 118:3-12 (Gallegos).

The Plaintiffs should have an opportunity to demonstrate these differences to the Court. As the Abraham Plaintiffs argue, they should be able to show the Court why their case should be certified, even if the Court does not certify a class in Anderson.  See Response to Motion to

Vacate at 5.  Vacating the class certification hearing until after the Court decides whether to certify a class in Anderson would be unfair to the Plaintiffs.  It would force them to wait for an unspecified length of time to obtain relief.  Again, the Defendants acknowledged this prejudice at the hearing, even though they minimized it.   See Feb. 21 Tr. at 115:18-21 (Sutphin).  Accordingly, vacating the hearing would not only prejudice the Plaintiffs, but it would also prevent the Court from sorting out the subtle differences between the two Plaintiffs' cases.  In sum, the Court concludes that the efficiency gains do not outweigh the prejudice to the Plaintiffs.[5]

**IT IS ORDERED** that: (i) WPX Production, LLC's Motion to Dismiss or Stay Litigation, filed October 29, 2012 (Doc. 16), is denied; (ii) the Plaintiffs' Motion to Modify Scheduling Order, filed October 2, 2013 (Doc. 77), is granted in part and denied in part; (iii) the Defendants' Opposed Motion to Modify Schedule and Request for Expedited Relief and Brief in Support, filed October 4, 2013 (Doc. 78), is granted in part and denied in part; (iv) the Plaintiffs' Motion for Leave to File Fourth Amended Complaint and Supporting Authorities, filed October 31, 2013 (Doc. 96), is granted; and (v) the Defendants' Motion to Vacate Class Certification Hearing, filed February 13, 2014 (Doc. 134), is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[5]To be fair to the Defendants, the Court does not believe that the Defendants have necessarily changed their position throughout the litigation, as the Plaintiffs suggest.  See Response to Motion to Vacate at 4.  Although the Defendants previously sought to consolidate the two cases, their basis for consolidation and their basis for vacating this hearing have always been to secure efficiencies.  See Feb. 21 Tr. at 8:1-7 (Sutphin).  The Court recognizes that the Defendants argue to vacate, rather than to consolidate, at this point, because the efficiencies of consolidation have passed.  See Feb. 21 Tr. at 8:1-7 (Sutphin).

*Counsel*:

Jake Eugene Gallegos
Michael J. Condon
Gallegos Law Firm, P.C.
Santa Fe, New Mexico

    *Attorneys for the Plaintiffs*

Sarah Gillett
Dustin L. Perry
Hall Estill Hardwick, P.C.
Tulsa, Oklahoma

--and--

Christopher A. Chisman
Holland & Hart LLP
Denver, Colorado

--and--

Mark F. Sheridan
Bradford C. Berge
Robert J. Sutphin
John C. Anderson
Elisa C. Dimas
Holland & Hart LLP
Santa Fe, New Mexico

    *Attorneys for the Defendants*